Ronald L. RICHARDSON,
Movant-Appellant,

v.

STATE of Missouri,
Defendant-Respondent.

No. 51140.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 30, 1986.

Motion for Rehearing and/or Transfer
Denied Nov. 4, 1986.

Application to Transfer Denied
Dec. 16, 1986.

Ronald L. Richardson, pro se.

John M. Morris, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

REINHARD, Judge.

Movant appeals the denial of his Rule 27.26 motion after an evidentiary hearing. We affirm.

Movant was convicted by a jury of first degree murder and was sentenced to life imprisonment. His conviction was affirmed on direct appeal by this court in *State v. Richardson,* 674 S.W.2d 161 (Mo. App.1984).

Movant filed a pro se motion to vacate his sentence under Rule 27.26. After he retained counsel, movant's first amended petition was filed, and an evidentiary hearing was held. In denying the motion, the court issued findings of fact and conclusions of law.

Movant's sole point on appeal is that the court erred in finding that movant's claim of ineffective assistance of counsel was "conclusory, barren of facts and unmeritorious." Movant contends that he presented facts at the evidentiary hearing which supported his allegation that:

> trial counsel failed to investigate two alibi witnesses in that [movant's] mother testified she had obtained the names and addresses of these witnesses, had provided the information to trial counsel and trial counsel admitted that neither he nor any other person in his office investigated this information.

On December 31, 1981, John Drozkowski, 71, was robbed, beaten and left in an alley behind a Majik Market convenience store. He died on January 12, 1982. The cause of death was trauma or injury to the skull and brain. According to the trial transcript, the man who found the victim got off work some three blocks away at 5:00 p.m. As he was passing by the alley at about 5:05 p.m. he saw the victim behind the Majik Market. About 10 to 15 minutes later a neighbor boy came by, and the man told him to summon help. The boy went into the Majik Market and told the assistant manager that there was a man in the alley who was badly hurt. The assistant manager called police. According to her testimony, this was at about 5:15 p.m. The first officer on the scene testified he received a call at 5:35 p.m., and when he arrived at the scene, paramedics were already there. Evidence indicated the victim arrived at Barnes Hospital at 5:40 p.m.

The assistant manager of the Majik Market testified she was acquainted with movant and Raymond Taylor who also was charged with the crime. She said she saw movant and Taylor on the parking lot of the Majik Market at about 5:45 p.m. and that soon after that movant came into the store to get change for a $5 bill and then played a video machine for five or ten minutes. The assistant manager's husband testified to some of the same facts and said he ultimately saw movant get on a Broadway bus.

On January 8, 1982, Taylor was arrested, and he confessed that he and movant had jointly decided to rob the victim and that he, Taylor, held the victim while movant repeatedly struck him with a tree limb. After bargaining with the state, Taylor testified at movant's trial about the facts of the robbery and the beating.

Confronted with Taylor's confession and his statement to movant that he had told the entire story to police officers, movant, after being given his Miranda warnings, made an oral statement and then this written statement:

I, Ronald Richardson, want to make the following statement:

That me and my friend, Raymond Taylor, were in the Majik Market located at Broadway Boulevard and Pelham Avenue and in the 8300 block of North Broadway Boulevard. We seen an old white man walking on Broadway Boulevard. At this time we were sitting on a bench. At this time we decided to rob the old man if he walked into the alley. We waited as the old man entered the alley and I found a tree limb in the alley and walked up behind the old man and hit him about ten times on the side of the head and neck while Raymond grabbed him and then hit and kicked him. We dragged him down the alley to the side of a building where me and Raymond took his money, jewelry and wallet and ran down the street. We went in the Majik Market for awhile where I played a pinball machine for a short time and then we left and got on a bus and went to a girl's house on Era Avenue. At which time we had some wine and marijuana. I later sold the ring and watch for $100.

The statement was admitted into evidence at trial. At the trial, movant testified that on the afternoon of December 31, he and Taylor were at the River Roads Mall shopping center. At about 5:00 p.m. they went to a nearby K-Mart where they saw a Rev. Harris. Movant testified he and Taylor then went to movant's home

and later caught a bus to the Majik Market where he played a video machine. He said he arrived at the Majik Market at about 7:00 p.m. Rev. Harris testified that he talked to movant and Taylor from 5:00 p.m. to 5:20 p.m. He was certain of the time because K-Mart closed at 5:00 p.m. on New Year's Eve. Movant also presented two witnesses in an attempt to establish an alibi for the time period prior to 5:00 p.m.

At the 27.26 motion hearing, there was testimony from movant, movant's mother, and Clifford Schwartz who represented movant at trial. Movant's mother testified that she had conducted an extensive investigation into an alibi defense for her son. She learned that ambulance service records indicated one call for medical assistance for the victim came from the Majik Market at 4:41 p.m. She testified that she notified movant's attorney office about the time and origin of the call to the ambulance service.

Movant's mother also testified about her efforts to identify the drivers of the Hampton bus and the Broadway bus and to learn when those buses were running during the time period established at trial for the robbery and beating. She said movant took the Hampton bus from the Majik Market and the Broadway bus to the Majik Market. She said the time sheet for the Broadway bus corresponded with movant's statement to her that he caught that bus between 6:45 and 7:00 p.m. She testified she told an attorney in Schwartz's office that she had information on both drivers, gave him information on one, and told him she would be talking to the other driver on the following day. She did not give anyone in the attorney's office any information about the times of the bus trips. The hearing transcript reveals that movant's mother did not reveal the names of the bus drivers or state what their testimony would be. The drivers were not presented at the hearing to testify on behalf of movant.

Attorney Schwartz testified he had known, prior to trial, of movant's mother's investigation of bus drivers and schedules but that he had no recollection of receiving

any information about the drivers and trip times. Schwartz testified he did not personally investigate regarding the bus drivers and schedules, and he did not know whether any attorney in his office or investigator hired by his office did so. Schwartz also testified he had no recollection of receiving information about the time of the call to the ambulance service. He said that, had he received the information, he would not have presented it because of all the other evidence adduced at trial regarding the time of the incident.

Movant testified that when he talked to Schwartz prior to trial, the attorney was more concerned with a challenge to the confession than he was with alibi witnesses.

■ Under Missouri law, in order to establish ineffective assistance of counsel, movant must prove his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and that he was prejudiced thereby. *Seales v. State,* 580 S.W.2d 733, 736 (Mo. banc 1979); *Gentile v. State,* 637 S.W.2d 30, 32 (Mo.App.1982). Counsel is presumed to be competent, *Campbell v. State,* 660 S.W.2d 721, 722 (Mo.App.1983), and movant bears a heavy burden to show ineffective assistance of counsel. *Seales,* 580 S.W.2d at 736.

On appeal, our review is limited to determining whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 27.26(j); *Smith v. State,* 680 S.W.2d 412, 413 (Mo.App.1984). The court's findings and conclusions are clearly erroneous only if a review of the entire record leaves this court with a definite and firm impression that a mistake has been made. *Gentile,* 637 S.W.2d at 32; *Smith,* 680 S.W.2d at 413. The credibility of witnesses is for the motion court's determination, and it may reject testimony even though no contrary evidence is offered. *Pool v. State,* 670 S.W.2d 210, 211 (Mo. App.1984).

Although most of the above opinions were written prior to the United States Supreme Court's decision in *Strickland v.* *Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Missouri law regarding claims of ineffective assistance of counsel is consistent with the *Strickland* opinion in which the Court held that in order to have a conviction or death sentence set aside on a contention of ineffective assistance of counsel, a convicted defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.* 104 S.Ct. at 2064. Of major importance in *Strickland* is the pronouncement that a motion court may proceed directly to the issue of prejudice without first determining whether counsel's conduct was deficient. *Id.* at 2069.

■ In determining whether counsel's performance was deficient, the inquiry must be whether counsel's assistance was reasonable, considering all the circumstances. *Id.* at 2065. The court should make every effort to eliminate the distortion wrought by hindsight and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* There is a strong presumption that criminal defense counsel's conduct falls within the "wide range of reasonable professional assistance," and a movant must overcome the presumption that certain actions of counsel might be regarded as sound trial strategy. *Id.* at 2066.

■ Counsel has a duty to make a reasonable investigation or to make a reasonable decision that a particular investigation is unnecessary. A decision to forego investigation must be evaluated for reasonableness under the circumstances, all the while giving great deference to counsel's judgment. *Id.*

■ If counsel's conduct is found not to meet the proper standard, a movant still must show that the error had an adverse effect on the defense, that is, any deficiencies must be prejudicial. *Id.* at 2067. The fact that an error by counsel might have had some conceivable effect on the outcome is not sufficient. *Id.* Rather, movant, when challenging a conviction, must

show there is a reasonable probability that, absent the alleged error, the fact finder would have had a reasonable doubt respecting guilt. *Id.* at 2069. In determining whether a reasonable probability exists, the court hearing an ineffectiveness claim must consider the *totality* of the evidence before the fact finder. *Id.* Furthermore, a court can evaluate an ineffective assistance of counsel claim on the basis of lack of prejudice alone, and it should do so if it is easier to dispose of an ineffectiveness claim solely on that basis. *Id.* at 2069–70. "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* at 2070.

In its six-page findings of fact and conclusions of law, the court described movant's allegations variously as "conclusory, non-factual, barren of facts, self-serving, not self-proving, or unmeritorious." All allegations were ruled against movant. The court concluded that defense counsel was not ineffective. We find that the court's findings of fact and conclusions of law were not clearly erroneous.

However, we believe this is a case in which the court could have made its determination on the basis of prejudice alone. In considering the totality of circumstances, we conclude that, irrespective of the alleged errors, there was no reasonable probability that movant would not have been convicted. Here, the record reveals that the movant confessed to the crime. This court on direct appeal found that the trial court did not err in reaching a determination that there was insufficient factual proof of involuntariness of the confession to necessitate the submission of that issue to the jury. The evidence contained in the written confession was supported by the testimony of movant's accomplice that he and movant had committed the crime. The time of discovery of the victim and the call to police was established by the testimony of at least four witnesses. Under these circumstances, it would appear to us unlikely that a jury would give serious consideration to additional alibi witnesses or to evidence which attempted to establish a different time for the call for medical assistance.

Judgment affirmed.

DOWD, P.J., and CRIST, J., concur.