**Mark S. CLARK, Movant-Appellant,**

v.

**STATE of Missouri,
Respondent-Respondent.**

No. 52747.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 8, 1987.

Motion for Rehearing and/or Transfer
Denied Jan. 7, 1988.

Maria V. Perron, Asst. Public Defender, Clayton, for movant-appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent-respondent.

REINHARD, Judge.

Movant appeals from the denial of his Rule 27.26 motion after an evidentiary hearing. We affirm.

Movant was convicted of second degree murder, § 565.004, RSMo. 1978, and sentenced to life imprisonment. His conviction was affirmed by the Supreme Court of Missouri in *State v. Clark*, 652 S.W.2d 123 (Mo. banc 1983).

After his conviction, movant filed a pro se Rule 27.26 motion in which he alleged numerous grounds for relief, including ineffectiveness of trial counsel. Counsel was appointed to represent movant, and an amended motion was filed. In it movant alleged that trial counsel advised him to appear before the grand jury and tell all the circumstances of the shooting and the drug transaction that precipitated it. Movant argued that, by testifying before the grand jury, he supplied the state with the

evidence of a felony, the drug sale, necessary to convict him of felony murder.

An evidentiary hearing was held, after which the court entered findings of fact and conclusions of law, denying movant's motion. Movant's sole point on appeal concerns his claim of the ineffectiveness of trial counsel in advising him to testify before the grand jury. He contends the motion court erred in not finding that his trial counsel failed to meet customary standards of care and diligence expected of attorneys in those circumstances.

Shortly after the shooting movant went to counsel, who had represented him previously in other matters, and "told him everything from the time it [the incident] started until the time I walked into his office." An arrest warrant was issued for movant about five months after the murder occurred, pursuant to a thorough police investigation. When movant discovered that police officers were looking for him, he went to counsel. Counsel appeared with him when he voluntarily surrendered to the police.

Movant told counsel that the victim had come to his house to sell him marijuana. There had been previous drug dealings between them. The victim demanded money from movant and ultimately pulled a gun. Movant was able to get a rifle he kept loaded in the house, and he shot toward the victim, not intending to kill him, but to scare him. The bullet, however, hit the victim, killing him. Movant put the victim's body in the trunk of the victim's car and took it to the Busch Wildlife Reserve. There he decapitated and later burned the body.

The grand jury subpoenaed movant to testify concerning the killing. Movant asked counsel if there was any way to prevent an indictment. Counsel believed movant's story and felt that his best defense was self-defense. To assert this defense movant would have to testify at trial. Counsel told movant that "grand juries usually, if they had any evidence before them, were pretty much of a rubber stamp and he would probably be indicted." Nevertheless, he felt there was a slim chance to prevent an indictment if movant testified before the grand jury and convinced them the killing was in self-defense. He explained that in cases of self-defense, appearances by defendants had prevented indictments.

It appears that counsel knew that movant had admitted the killing to at least three witnesses and that there was little chance the killing could not be tied to movant. Counsel did not believe the facts as stated to him by movant constituted felony murder under the murder statutes, but he was concerned about movant being charged with capital murder. He explained to movant that his testimony could be used against him at trial and that, as his attorney, he would not be allowed to accompany him at the grand jury.

Movant appeared before the grand jury, told his story, including the drug transaction, and was indicted. At trial his grand jury testimony was used against him, and he was convicted of second degree murder based on the common law felony murder rule.

The conviction was initially reversed by a division of the supreme court, but the case was reheard en banc and affirmed unanimously. *Clark*, 652 S.W.2d at 123. In that opinion, the court considered the murder statutes and the common law felony murder rule, and proved counsel's judgment on that issue to be wrong.

On appeal, our review is limited to determining whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 27.26(j); *Richardson v. State*, 719 S.W.2d 912, 915 (Mo.App.1986). Only if a review of the entire record leaves this court with a definite and firm impression that a mistake has been made will the motion court's findings and conclusions be found to be clearly erroneous. *Richardson*, 719 S.W.2d at 915. Here, we are confronted with two issues: was counsel's representation ineffective because of his advice concerning testifying before the grand jury, and, if so, has movant fulfilled his burden to prove that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.

2d 674 (1984); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

The reasonableness of counsel's assistance, considering all the circumstances, is the yardstick for measuring whether counsel was ineffective. *Richardson*, 719 S.W.2d at 915. Movant must overcome presumptions that counsel's conduct falls within the broad range of reasonable professional assistance and that certain actions of counsel might be regarded as sound trial strategy. *Id.* At the evidentiary hearing, movant presented attorney Frank Anzalone, who testified that he would never advise a client to testify before a grand jury and that, in his opinion, such conduct constituted a lack of reasonable care and skill by an attorney. The state presented Assistant Prosecuting Attorney Phyllis Weber, who supervised and conducted the affairs of the grand jury in St. Louis County. She estimated that "three-quarters of the times" defendants testify before the grand jury no indictment is made. In murder cases, "on numerous occasions" when the defendant testifies to self-defense no indictment is handed down.

As stated above, movant's trial counsel testified he knew of three adverse witnesses who had been subpoenaed to testify before the grand jury. At trial one witness, Steven Halter, testified that he met with movant on the afternoon of the murder to buy some marijuana. He noticed blood on the trunk and bumper of the car movant was driving. Halter said movant told him the victim had come over with some marijuana and had pulled a gun on him, and movant killed him. Movant asked him to help hide the body, but Halter refused and left.

A second witness, Christopher O'Brien, testified that movant called him the day of the killing and asked him to come over and paint the bedroom. O'Brien went to movant's house and found him mopping the floor. He patched some holes in the bedroom wall and painted the bedroom. He said movant told him of the killing. Later that evening O'Brien went with movant to the Busch Wildlife Reserve. Movant left the car with a container of gasoline and a blanket he said he wanted to burn, and he returned to the car shortly.

The third witness, Steven O'Keefe, went with movant to the wildlife reserve sometime after the killing. Movant showed him a skull and told him it was the man he killed over a drug transaction. Movant then threw the skull out of the car window.

Many instances of movant's drug dealings appear in the testimony of other witnesses at trial. Several witnesses testified to the circumstances leading up to the transaction with the victim on the day of the murder, in which three pounds of marijuana was sold.

From movant's and counsel's testimony at the evidentiary hearing it is apparent that movant hoped he would not be indicted. A calculated risk was taken. Counsel's judgment concerning the law of felony murder was determined to be erroneous on appeal; however, until the supreme court's decision there was uncertainty in this area. Counsel did not err in opining that movant would be indicted if he did not testify before the grand jury because of the evidence against him. Furthermore, counsel knew that movant was the only person who could testify to establish that the killing was in self-defense; he would have to testify before the grand jury and, if indicted, at trial. We do not believe the court's determination that he was not ineffective was clearly erroneous in light of the circumstances prior to the grand jury hearing.

Moreover, movant has failed to prove that he was prejudiced by the alleged ineffectiveness. There was strong evidence of movant's guilt. He told many people that he had killed the victim. Evidence indicated he took the body to the Busch Wildlife Reserve and decapitated and burned it. Substantial evidence of movant's drug transaction with the victim was before the jury. It appears to us that movant's testimony before the grand jury was not the only evidence supplying the necessary elements of the charge for which he was convicted and the details of the killing and drug transaction. We believe the state's evidence would have been sufficient to convict movant, even if movant had not testi-

fied before the grand jury hearing. We can find no prejudice.

Judgment affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.