**Mark Stephen PIERON, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

**No. 57023.**

Missouri Court of Appeals, Eastern District, Division One.

July 24, 1990.

Janet M. Thompson, Columbia, for movant-appellant.

William L. Webster, Atty. Gen., Frank A. Jung, Asst. Atty. Gen., Jefferson City, for respondent-respondent.

REINHARD, Judge.

Movant appeals from the denial of his Rule 29.15 motion after an evidentiary hearing. We affirm.

A jury convicted movant of first degree burglary, second degree burglary and two counts of stealing. The trial court sentenced him as a persistent offender to concurrent prison terms of 20, 15, 15 and 15 years for the respective convictions. We affirmed on direct appeal, *State v. Pieron*, 755 S.W.2d 303 (Mo.App.1988), wherein a detailed statement of the facts can be found.

The burglaries with which movant was charged occurred early in the morning of December 17, 1985, within an hour of one another. A palm print found at the first burglary scene matched that of movant. Police officers arrived at the second burglary scene while movant and his companion were still in the house. A police officer saw movant emerge from the rear of the house; movant was able to escape, but his companion was caught. Through interrogation of the companion, a detective learned that movant was the other individual involved in the burglary. The police officer who saw movant escape from the rear of the house identified movant in a photographic lineup. A fingerprint taken from a car left at the second scene matched that of movant. The car belonged to movant's girl-friend.

Movant filed a pro se Rule 29.15 motion [1] wherein he alleged, inter alia, that his trial counsel was ineffective in that he breached his duty of confidentiality by relating to the trial court, in response to movant's complaint concerning counsel's failure to call certain alibi witnesses, that movant had made an admission of guilt to him during trial. The transcript of movant's sentencing reveals the following colloquy:

THE COURT: [Movant], and [Defense Counsel], do you know of any legal cause or know why [movant] should not at this time have sentence and judgment pronounced upon him?

[DEFENSE COUNSEL]: I know of none, your honor.

[MOVANT]: Yes, your honor, if I may. I asked you to give me a couple of minutes where I can present my reason why, if I may.

[THE COURT]: Why I should not pronounce sentence upon you?

[MOVANT]: Yes, sir.

[THE COURT]: You may do so.

[MOVANT]: [Movant apparently filed a motion alleging several grounds why sentence should not be pronounced. His

---

1. Appointed counsel filed an untimely amended motion.

arguments supporting several impertinent grounds are omitted].

. . . .

On both occasions when I was visited by [defense counsel]—and I also gave the investigator ... names, addresses and phone numbers of witnesses I wanted subpoenaed for my defense: Michelle Helm, Curtis Braddum, Mark Brown. One of my witnesses wasn't ever subpoenaed, which was Michelle Helm, and Curtis Braddum never showed up for court, which [defense counsel] told me if they didn't come they would be arrested and brought in anyway. This never happened and basically left me without any defense and violates my sixth amendment right for compulsory process for obtaining witnesses.

Also, under my constitutional rights to a fair trial, the prosecutor may not comment at trial on my failure to produce a witness named as supporting alibi, or failure to present an alibi itself, which he did do in closing argument.

. . . .

[THE COURT]: All right. Any comment?

[DEFENSE COUNSEL]: Judge, I think that—I think I have to answer some of the allegations. Just so they are not waived at a later time. I did, in fact, endorse [movant's] alibi witnesses, as I think the file will reflect that—both Curtis Braddum and Mark Brown showed up; Curtis Braddum showed up on the Monday prior to trial and [the prosecutor] and I both spoke to him. I think [the prosecutor] can confirm that.

[PROSECUTOR]: That's correct, your honor. Both of them were here.

[DEFENSE COUNSEL]: I had, in fact subpoenaed them. This woman, Michelle Helms, is [movant's] girl-friend. I did not see a need to subpoena her. She could certainly have shown up at trial herself if she wanted to. I indicated to [movant] I didn't think you had to subpoena a friendly witness. All she could have added was she lent the car to the fellow who was arrested at the scene. Mr. Braddum—I don't think I should be

in a position to compel somebody to perjure themselves. [Movant's] prints were found inside the one residence and at trial he indicated to me that the police officer was lying because at the time of the burglary he was, in fact, wearing gloves. So it seemed to me to be ridiculous to send somebody down to Cape Girardeau or Poplar Bluff, where Mr. Braddum lived, in order to arrest him and put him on here so he could put on perjured testimony as to an alibi.

. . . .

You know, I bear [movant] no grudge. Everyone has to pursue the remedies they feel are appropriate. Unfortunately, I don't feel as though, as I said, it's my obligation to produce witnesses to perjure themselves in an alibi defense, and after [movant], you know, indicated to me not that he was innocent but that he was wearing gloves and so would not have left the fingerprint, there was nothing left to do.

And he says I did not present a defense. I think I was rather strident, based on the indication to me by [movant] he was guilty and I could not suborn perjury. So I request we be allowed to withdraw.

. . . .

[THE COURT]: All right. Thank you.

The court will overrule [movant's] motions that were filed with the court.

Movant testified at the evidentiary hearing that in discussing with counsel the police officer's testimony concerning the palm print, he did not admit his guilt for the burglaries with which he was charged, but rather he only indicated that had he committed the offenses, he would have worn gloves. Defense counsel testified that in the context he did not believe movant was speaking hypothetically. Rather, he believed movant was admitting that he did, in fact, commit the burglaries.

The motion court found movant's testimony in this regard to be not credible. The court concluded:

Movant, by his dishonest conduct, placed his attorney on the horns of an ethical dilemma and now attempts to

avoid the consequences of such behavior. There is wholly insufficient evidence to support a finding of ineffective assistance of counsel. A review of the record in this case reveals that trial counsel did a more than adequate job of dealing with a difficult, manipulative client.

The motion court denied all relief requested in movant's motion.

Our review is limited to determining whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 29.15(j); *Brummell v. State*, 770 S.W.2d 379, 380 (Mo.App.1989). The motion court's findings and conclusions are clearly erroneous only if a review of the entire record leaves the appellate court with a definite and firm impression that a mistake has been made. *Id.*

The motion court is not required to believe the testimony of a movant or any other witness at an evidentiary hearing, even if uncontradicted, and an appellate court must defer to the motion court's determination of credibility. *Richardson v. State*, 719 S.W.2d 912, 915 (Mo.App.1986). The movant has the burden of proving his asserted grounds for relief by a preponderance of the evidence. *Armour v. State*, 741 S.W.2d 683, 688 (Mo.App.1987).

In determining whether counsel's performance was deficient, the inquiry must be whether counsel's assistance was reasonable, considering all the circumstances. Every effort should be made to eliminate the distortion wrought by hindsight and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. There is a strong presumption that criminal defense counsel's conduct falls within "the wide range of reasonable professional assistance." *Richardson v. State*, 719 S.W.2d 912, 915 (Mo.App.1986), *citing Strickland v. Washington*, 466 U.S. 668, 688–89, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

■ In his primary point on appeal, movant presses his claim wherein he contends counsel breached his duty of confidentiality. He relies on two cases which discuss the sometimes conflicting duties of a lawyer to act with candor toward the court and to protect a client's confidences: *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) and *U.S. v. Long*, 857 F.2d 436 (8th Cir.1988). Both cases discuss the responsibilities of a lawyer when it becomes apparent that his client will perjure himself at trial.

This is not such a case. Counsel's disclosure did not come in response to his client's announced intention to commit perjury at trial. Here the disclosure came after trial and was in direct response to movant's attack on counsel's failure to call witnesses who he believed would perjure themselves. Under these circumstances we do not believe counsel was precluded under the Rules of Professional Conduct from revealing to the court movant's admission. *See* Rule 1.6(b)(2) of Rule 4 (Rules of Professional Conduct) (exception to the general duty of confidentiality allowing counsel to respond to allegations concerning his representation of a client); and *Stuckey v. State*, 756 S.W.2d 587, 593 (Mo.App.1988) (attorney-client privilege waived when movant alleges ineffective assistance of counsel).

However, there is a more compelling reason not to condemn counsel's conduct in this case. Our Rules of Professional Conduct require a lawyer to disclose client perjury to the court. Rule 3.3 specifically provides:

(a) A lawyer shall not knowingly:

. . . .

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

. . . .

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

(b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6 [Confidentiality of Information].

This Rule is simply a recognition of the seriousness of perjury and the fact it undermines the notion of our system of justice as a search for truth. *See Nix*, 475 U.S. at 168–70, 106 S.Ct. at 994–96.

Defendant, while conceding an obligation on the part of defense counsel not to present perjured testimony, argues that counsel should not have given an explanation for his failure to call the alibi witnesses until the "proper forum," i.e. a Rule 29.15 proceeding. The suggestion is not well-taken. In effect, movant's argument as to why judgment should not have been pronounced was that certain alibi witnesses existed, but due to counsel's ineffectiveness, they were not called. If believed, this argument might have drawn sympathy from the trial court and resulted in a lesser sentence. Or, if movant had his way, the argument would have resulted in no sentence whatsoever being imposed. Had counsel remained quiet at the sentencing and allowed movant's assertions to go unchecked, he would have violated the provisions of Rule 3.3. Under this Rule, not only was counsel's response professionally acceptable, it was also required. Point denied.

■ In his other point movant contends the motion court's findings of facts and conclusions of law did not address all his grounds for relief. In its findings, the court stated that it had "distilled" the numerous claims made by movant to two which are cognizable. In other words, the motion court found the majority of movant's claims not cognizable. We have reviewed movant's pro se motion and we conclude that the claims not addressed by the motion court were either abandoned at the evidentiary hearing or are not cognizable in this proceeding.

Judgment affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.