**STATE of Missouri, Respondent,**

v.

**Gerald Allen ELMORE, Appellant.**

No. WD 42076.

Missouri Court of Appeals,
Western District.

Sept. 11, 1990.

J. Bryan Allee, Columbia, for appellant.

William L. Webster, Atty. Gen., M. Melissa Manda, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and FENNER and ULRICH, JJ.

FENNER, Judge.

Gerald Allen Elmore appeals his conviction of forgery, following jury trial, and the denial, following an evidentiary hearing, of his motion for post-conviction relief.

The facts, although not disputed, will be recited briefly as they are relevant to an understanding of certain points presented by Elmore on appeal. Viewed in the light most favorable to the verdict, the evidence presented at trial revealed that on October 13, 1988, Elmore arrived in Columbia following a bus trip from Moberly where he had been released from the Missouri Training Center for Men. Elmore's destination was Rolla where he was to visit his mother. During a layover in Columbia, Elmore met an individual named Kent Shreve. The two men began a conversation and Shreve offered to help Elmore find a job and to take Elmore to Rolla to visit his mother. The next day Elmore met Shreve and the two drove to Rolla to Elmore's mother's home, where they stayed for about 30 minutes. The two men returned to Columbia and went to a bar where Shreve introduced Elmore to three women. Shreve, Elmore and the three women drove to a farmhouse in the area of Harrisburg. According to Elmore, he observed Shreve along with other persons who were at the farmhouse, participate in a satanic ritual. In the early morning of October 15, Shreve, Elmore and two of the women returned to Columbia.

On Sunday, October 16, at about 3:00 p.m., Cara Heiss, an employee of Howard Johnson Motel in Columbia, saw Elmore enter the lobby of the hotel. Elmore asked Heiss for a room and offered to pay for it with a money order. Heiss noticed that the dollar amount numbers stamped on the money order did not correspond with the written dollar amount figures on the order. Heiss returned the money order to Elmore and told him she could not accept it and Elmore left. At that time, Heiss observed two people waiting outside in a car.

Later on that day, near sunset, Elmore was seen entering the Budgetel Motel in Columbia by the desk clerk, Kristy Randall. Elmore asked Randall about the cost of a room and if she would take a money order. Elmore presented the money order, admitted and identified at trial as State's Exhibit 3. He then filled out a registration form, received a room key and change from the money order and left. Although Elmore was alone at this time, Randall noticed someone driving a small station wagon past the office window, but could not identify the driver.

At approximately 9:00 p.m. that evening, Greg Stephens was on duty at the Kwik Pantry convenience store in Columbia where he sold Elmore a money order in the amount of $1.50. This money order, admitted at trial as State's Exhibit 1, had been altered to read $150.50 in numerals.

Elmore went back to the Howard Johnson Motel that same night, Sunday, October 16, 1988, or the early morning hours of the 17th of October. John Oerly, the assistant manager, saw Elmore come in. Oerly assisted Elmore in renting a room which was paid for with a money order, identified at trial by Oerly as State's Exhib-

it 1. Oerly deducted the amount for the room and returned the remainder and a room key to Elmore.

Before Elmore left the motel office to enter a taxicab, Oerly saw a blue station wagon pull up driven by a man with a black beard. When Elmore left the office, Oerly heard a "heated exchange" between Elmore and the bearded man driving the station wagon.

Later that night, Elmore was arrested by Officer Eric Stevenson of the Columbia Police Department on the forgery charge. Elmore admitted passing the money orders.

Following the trial and conviction, Elmore filed a motion pursuant to Rule 29.15, alleging ineffectiveness of his trial counsel. An amended motion was subsequently filed by appointed counsel alleging trial counsel was ineffective for failing to investigate and call as a witness the taxi driver who was with Elmore on the night of October 16, 1988. Following an evidentiary hearing, the motion court entered findings and conclusions and denied the relief sought by Elmore. This consolidated appeal timely follows in which Elmore presents four points.

■ In his first point, Elmore alleges that the trial court erred in submitting Instruction number 6 because said instruction failed to describe the instrument claimed to have been forged. The complained of instruction is as follows:

### INSTRUCTION NO. 6

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about October 17, 1988, in the County of Boone, State of Missouri, the defendant transferred with the knowledge or belief that it would be used as genuine a money order, and        ·

Second, that defendant knew that this writing had been altered so that it purported to have been made with different terms, and

Third, that defendant did so with the purpose to defraud,

then you will find the defendant guilty of forgery, unless you find and believe it is more probably true than not true that the defendant is not guilty by reason of duress, as submitted in Instruction No. 7.

If you do find the defendant guilty of forgery, you will return a verdict finding him guilty of forgery.

Elmore takes issue with the description of the forged writing as a "money order" claiming this to be an inadequate description and a deviation from the MAI–CR3d 324.20.4 form, in that the instruction given failed to specify which money order constituted the one charged against him.

MAI–CR3d 324.20.4 is the verdict directing instruction used for the offense of FORGERY: USING, POSSESSING, OR TRANSFERRING. The notes on use accompanying the instruction provide the following:

When the defendant is being tried for more than one count of forgery, the description of the writing or item required in paragraph First must be sufficient to distinguish it from the writing or item in the other counts. In such a situation, the description could include such things as the date, amount, and identification number of the writing, as well as the payee.

Elmore's argument that the instruction deviated from MAI–CR3d 324.20.4 and the accompanying Notes on Use is technically incorrect. A review of the Notes on Use indicates that a description of the item must be given where a defendant is being tried for more than one count of forgery, which is not the case in the present situation as Elmore was charged with only one count of forgery.

Prior to trial, defense counsel made an oral motion for a bill of particulars to determine the particular money order which would be the subject of the forgery charge and was informed that it would be the money order passed to John Oerly at the Howard Johnson Motel. Defense counsel then requested a motion *in limine* to prohibit the State from referring to any other money orders. The motion was overruled

by the court with a directive that the prosecutor create a proper foundation that the other money orders were part of a common scheme or plan.

At trial, the money order, which was the subject of the forgery charge, was admitted into evidence as State's Exhibit 1, as well as the accompanying receipt, State's Exhibit 2. Elmore admitted that he transferred this money order. Additionally, State's Exhibit 3, a money order and 4, an accompanying receipt were received into evidence. State's Exhibit 3, when admitted, was identified by Kristy Randall, the front desk clerk at the Budgetel Motel, as the money order she received from Elmore in the afternoon on October 16, 1988. Exhibits 1 and 2 were later introduced through the testimony of Greg Stephens, clerk at the Kwik Pantry. He stated that the transaction memorialized by these exhibits occurred at about 9:00 p.m., on October 16, 1988, when he sold the money order to Elmore. Exhibit 4 was subsequently offered through the testimony of Stephens and identified by him as the receipt for the money order, (Exhibit 3), which happened to have been sold by him earlier in the day on October 16, 1988.

Although instruction number 6 did not distinguish between the money orders admitted at trial, there is no prejudice found to have occurred as a result of inadequate description. The instruction itself states that the crime occurred on or about October 17, 1988. The testimony of the desk clerk at the Howard Johnson, as well as that of Elmore himself, indicated the money order, the subject of the charge of forgery, was transferred late on the night of Sunday, October 16, or the early morning hours of October 17. While less than precise, the evidence adduced indicated that only one money order was transferred on or about October 17, 1988.

Even assuming, *arguendo*, that the jury could have been confused, any confusion was clarified during closing argument where the prosecutor made very clear that the subject of the prosecution was Exhibits 1 and 2, relating to the money order transferred at Howard Johnson. Elmore's argu-

ment to the effect that the instruction gave an inadequate description of the money order and gave the jury a roving commission to find him guilty of other prior acts is rejected. Point one is denied.

In point two, Elmore argues that the trial court erred in admitting, over objection, State's Exhibits 3 and 4 into evidence because said evidence involved proof of prior and uncharged crimes and were irrelevant. He complains that admission of evidence regarding other money orders than State's Exhibits 1 and 2, the subject of the charged offense, violated his constitutional rights to due process, to prepare his defense and to a fair trial, as such evidence prejudiced the jury against him.

Evidence of other crimes is generally inadmissible unless the evidence has a legitimate tendency to establish a defendant's guilt of the crime charged. *State v. Kenley*, 693 S.W.2d 79, 81 (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900 (1986). Evidence of other crimes may be admissible when the evidence tends to establish a common scheme or plan embracing the commission of two or more crimes so closely related that proof of one tends to prove the other. *Id.* Whether evidence of other crimes is admissible turns on whether the evidence is relevant and that determination is made by the trial court which is in the best position to evaluate whether the potential prejudice outweighs the relevance. *Id.*

A reiteration of the circumstances surrounding the admission of State's Exhibits 3 and 4 is unnecessary as such were detailed under point one. However, the evidence of the other money order and receipt, other than the one for which Elmore was charged was clearly evidence of a "common scheme or plan" and had a legitimate tendency to establish Elmore's guilt of the crime of forgery.

As correctly argued by the state the prejudice to Elmore was not outweighed by the relevance. Elmore presented the money orders at the same motel (Howard Johnson's) within a nine hour time period. Both money orders were purchased on the same day from the Kwik Pantry store. Both the

money orders Exhibit 1 and Exhibit 3 were presented at Howard Johnson's, one successfully, the other unsuccessfully. Elmore did receive cash after he successfully transferred the money orders at Budgetel (Exhibit 3) and Howard Johnson's (Exhibit 1).

Exhibits 3 and 4 were relevant to show that Elmore used the same method to commit crimes on the same day and for that reason were admissible. The trial court did not abuse its discretion in so holding. Point two is denied.

■ In his third point, Elmore claims the trial court erred in excluding Defendant's Exhibit A and testimony from Detective Larry McCray on hearsay grounds because such evidence and testimony was offered to prove that Elmore's life was "in jeopardy." As such, the argument goes, the evidence was admissible and probative of Elmore's defense of duress.

Elmore had assisted McCray in relation to another criminal investigation involving a homicide believed to be related to a satanic cult. McCray attempted to testify as to Elmore's claims of witnessing satanic activity, but the testimony was excluded on relevancy and hearsay grounds. Defendant's Exhibit A, upon which Elmore made an offer of proof, consisted of a letter written by McCray to the prosecutor. In the letter, McCray informed the prosecutor that there was no indication that the homicide was satanic related, but if it were then releasing Elmore from the county jail could place his (Elmore's) life and family in jeopardy. The letter was written approximately six months after the forgery incident.

Elmore submits that this evidence and testimony was not hearsay because it was not offered for its declarative truth but to show his state of mind, which was an essential part of his defense of duress. Elmore's defense at trial was that Kent Shreve coerced him to pass the money orders, through the use of threats against him and his family, regarding the satanic group.

Clearly, evidence which goes to establish a person's state of mind is an exception to the rule against hearsay. *State v. Boliek,*

706 S.W.2d 847, 850 (Mo. banc 1986), *cert. denied,* 479 U.S. 903, 107 S.Ct. 302, 93 L.Ed.2d 276 (1986). However, the question of admissibility of the evidence herein, turns not on the hearsay nature, but on the relevance of the testimony and exhibit.

"Duress is 'an affirmative defense that the defendant engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or threatened imminent use of, unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist.'" § 562.071, *State v. Kelly,* 747 S.W.2d 639, 640 (Mo. App.1988). To constitute a defense the coercion must be present, imminent and impending, and of such a nature as to induce a well grounded apprehension of death or serious bodily injury. *Id.* (citation omitted).

At trial, during Elmore's offer of proof, McCray was questioned by the court and responded that he had no personal knowledge of the incident involving Elmore's arrest on the forgery charge. The incident to which McCray would have given testimony occurred some six months subsequent to the forgery incident. McCray merely questioned Elmore in jail as part of an unrelated investigation involving a homicide. As Defendant's Exhibit A makes clear, during the time of the homicide investigation, McCray did not feel the information given him was related to the homicide. Therefore, McCray's testimony would not have aided Elmore in proving that at the time of the events surrounding the forgery charge he was under a threat of force, as McCray had no knowledge of the incident.

Further, the testimony Elmore sought to elicit through McCray's testimony and the proffered exhibit was adduced and placed before the jury for consideration through Elmore's own testimony. Thus, it cannot be said that the refusal of the testimony and exhibit was an abuse of the trial court's discretion nor was the exclusion prejudicial to Elmore. Point three is denied.

In his fourth and final point, Elmore takes issue with the motion court's denial of his request for post-conviction relief wherein he alleged ineffective assistance of trial counsel. In his motion Elmore claimed his trial counsel was ineffective for failing to adequately investigate and call as a witness, Russell Shaw. Shaw was the taxi driver who was with Elmore on the evening the money orders were transferred.

At the evidentiary hearing, Shaw testified that he picked Elmore up on the evening in question and drove to several locations. Shaw drove Elmore to the Howard Johnson's Motel where Elmore went in to get a room. Shaw also went in to talk to the desk clerk at which time he noticed Elmore handed the clerk a money order which appeared "irregular" to Shaw. When Shaw and Elmore left the lobby and were outside Shaw observed a "very heated discussion" between Shreve and Elmore. Later that evening, after Shaw dropped Elmore off, he alerted the police and Elmore was arrested.

Also during the evidentiary hearing, Elmore's trial counsel testified that his investigator contacted Shaw, a matter in dispute, as Shaw testified he had only been contacted by the police and the prosecutor's office. Defense counsel stated that as a result of the investigation he determined that Shaw would have been a very damaging witness, that essentially Shaw is the one who made the case and that Shaw would have been a very good witness for the state.

The motion court found, among other things, that trial counsel investigated Shaw as a potential witness and determined Shaw's testimony would be detrimental to Elmore's defense and would, in fact support the state's case. The motion court also found that Shaw would not have testified that Elmore and Shreve had a heated argument *prior* to the passing of the forged money order, that the only evidence Elmore had on his duress defense was his own testimony and that the testimony of Shaw and Shreve was not supportive of that defense, and that Elmore's testimony was lacking in credibility and unworthy of belief.

The issue at hand is whether the findings, conclusions and judgment of the motion court are clearly erroneous. *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). The findings and conclusions of the motion court will be found clearly erroneous only if a review of the entire record leaves this court with the definite and firm impression that a mistake was made. *Id.* at 696. The motion court is not required to believe the testimony of a movant or any other witness at a Rule 29.15 hearing, and this court must defer to the motion court's determination of credibility. *Id.*

There is a strong presumption that criminal defense counsel's conduct falls within the wide range of reasonable professional assistance and a movant must overcome the presumption that certain actions of counsel might be regarded as sound trial strategy. *Richardson v. State*, 719 S.W.2d 912, 915 (Mo.App.1986) (citation omitted). A decision not to call a witness to testify is a matter of trial strategy that is virtually unchallengeable. *Berry*, 759 S.W.2d at 249. An appellant seeking post-conviction relief on the ground that his attorney rendered ineffective assistance in failing to call a certain witness to testify must show that the witness would have provided a viable defense. *Lockhart v. State*, 761 S.W.2d 634, 635 (Mo.App.1988).

The record does not support Elmore's allegation. Rather, the record indicates that trial counsel chose not to present the testimony of a witness who would have, in large part, testified in favor of the state. This decision was sound trial strategy and the motion court did not err in so holding. Point four is denied.

Elmore's conviction is, in all respects, affirmed.

All concur.