William Rodney MOORE,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 18314.

Missouri Court of Appeals,
Southern District,
Division One.

May 3, 1993.

Judith C. LaRose, Columbia, for movant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent-respondent.

SHRUM, Judge.

The movant appeals from the denial, following an evidentiary hearing, of his Rule 24.035 motion. We affirm.

On December 19, 1991, the movant pled guilty to a charge of second degree murder, in violation of § 565.021, RSMo 1986, and was sentenced to a term of life imprisonment. The charges arose out of the August 19, 1991, beating death of Leon W. "Jack" Colten. The movant originally was charged with first degree murder, § 565.-020, RSMo 1986.

Prior to entering his plea, the movant signed a "Petition to Enter Plea of Guilty," which included the following paragraph:

14. Neither I, nor any of my friends or loved ones, has been mistreated, threatened, coerced, or forced in any manner by anyone to get me to plead guilty....

At his guilty plea hearing, the movant stated he had "been over this petition" with his attorney, that he understood the document, and that he had signed it. The trial court found that the movant understood the nature of the charges against him and the consequences of his plea of guilty and that he entered his plea "freely and voluntarily."

The movant's Rule 24.035 motion, as amended March 20, 1992, by appointed postconviction relief counsel, included as grounds for relief a challenge to the voluntariness of the guilty plea because "it was coerced as the result of threats of bodily harm made to Movant, and also similar threats directed to Movant's mother, father, sister and brother."

At the June 29, 1992, evidentiary hearing, the movant's mother and two of his sisters testified about the nature of the threats and how they came to learn of them. The movant's mother said she talked to the movant about the threats on "more than one" occasion and that he "acted upset about it." The mother was asked if, prior to the plea, she had discussed with the movant whether he should enter the plea to avoid harm to himself or his family. She replied, "Not really. I have tried to talk to him down here and he said, you know, he had a lawyer; he couldn't discuss things that was going on with me."

The movant's sister, Teresa, testified she told the movant about the threats. Asked if he expressed concern for his safety or that of his family, Teresa responded, "He really didn't talk about anything; I just told him and he just kind of ducked his head."

The movant's sister, Sharon, said she regularly accompanied her mother to visit the movant in jail and that she was present when her mother told him about the threats. Sharon said her mother told the movant that "maybe [pleading guilty] would be the best thing to do because, you know, she didn't know what was going to happen, maybe to her, to any of us." Asked if she remembered the movant's response to this suggestion, Sharon testified, "No; it's been so long."

The movant testified his mother told him on five or six occasions about the threats and the only reason he pled guilty was "I didn't want nothing to happen to my family." The movant admitted he understood at the time he entered his plea that he was pleading guilty to a lesser charge than the original, that the sentence he would receive would carry with it the possibility of parole, and that had he gone to trial on the original charge he risked a sentence of death or life imprisonment without the possibility of parole. Nevertheless, he insisted throughout his motion hearing testimony that the only reason he pled guilty was because of the threats.

Asked about his signing of the "Petition to Enter Plea of Guilty," the movant said he does not read well, that his attorney did not fully explain the document to him, that

he "just glanced through it and signed it," and, concerning paragraph 14 of the petition, "I don't remember reading this one." The movant's testimony about the voluntary nature of his signing the petition can be summed up in his statement, "All I knew I was going to plead guilty so I signed it."

The movant said he told his trial attorney the threats were influencing his decision to plead guilty. "I told him I didn't want nothing to happen to my family so I'm going to take the second degree murder so that the threats and stuff would stop." The movant said his attorney told him "not to worry about the threats, you know; they probably wasn't meaning nothing by it."

The movant said he did not inform the court of the threats at the time he entered his guilty plea because "you can't plead guilty to any kind of charge if you're coerced by threats or any nature of promises; the court is not allowed to accept your guilty plea."

The movant admitted at the motion hearing that his postconviction counsel had advised him the motion court likely would allow him to obtain testimony from other witnesses, including the movant's trial counsel, who was unable to attend the hearing, and he said he understood that his trial counsel's testimony might help his case or it might harm it. The movant then advised his postconviction counsel on the record to rest his case rather than seeking a continuance to call other witnesses.

The motion court issued findings of fact and conclusions of law and denied postconviction relief. The court's findings include these:

2. The Court finds no credible evidence that Movant pled guilty because of threats or coercion. The written petition filed by Movant and his counsel at the time of his plea of guilty stated no such coercion or threats existed.

3. Movant fails to prove that his statements were not voluntarily made. The only evidence of this is Movant's testimony, which the Court does not find to be credible.

The movant continues his challenge to the voluntariness of his plea as the basis of his sole point on appeal.

Certain principles guide our deliberations. Our review is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 24.035(j); *Day v. State*, 770 S.W.2d 692, 695, *cert. denied sub nom., Walker v. Missouri*, 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). The motion court's findings and conclusions are to be deemed clearly erroneous only if a review of the entire record leaves the appellate court with the definite and firm impression that a mistake has been made. *Day*, 770 S.W.2d at 695–96.

A movant can attack a guilty plea only on the grounds that it was not knowingly and voluntarily made. *Sinn v. State*, 741 S.W.2d 749, 750[2] (Mo.App.1987). A movant should be permitted to withdraw a guilty plea that was induced by fear or coercion. *Tillock v. State*, 711 S.W.2d 203, 205[3] (Mo.App.1986). A motion court is not required to believe a movant's testimony, *Armour v. State*, 741 S.W.2d 683, 688 (Mo.App.1987), and the court may reject testimony even though no contrary evidence is offered. *Richardson v. State*, 719 S.W.2d 912, 915 (Mo.App.1986). This court will defer to the motion court's determination of credibility. *Armour*, 741 S.W.2d at 688.

The movant argues the motion court's findings and conclusions are clearly erroneous in that the postconviction record shows he entered his guilty plea involuntarily because of the threats to him and his family.

On its face, the transcript of the guilty plea hearing supports the motion court's finding No. 2, the gist of which is that the movant's claim of involuntariness is refuted by the record. Thus, to prevail, the movant must show that the record of his guilty plea is the product of the alleged coercion and, therefore, it cannot refute his claim of involuntariness. The motion court's finding No. 3 deals with this aspect of the movant's burden.

In finding No. 3, the court stated that the only evidence at the postconviction relief hearing concerning the effect of the threats on the movant's decision to plead guilty came from the movant himself. The motion court is correct in this assessment. The movant's mother and two of his sisters testified about the movant's knowledge of the threats, but none was able to provide evidence of the effect of the threats on the movant's decision to plead guilty. The movant declined the opportunity to obtain testimony from his trial attorney in support of his claim that he had told the attorney he was going to plead guilty because of the threats.

The motion court found the movant's testimony about the effect of the threats on his decision to plead guilty was not credible. We defer to that determination of credibility.

The motion court's findings and conclusions are not clearly erroneous. We affirm the judgment of the motion court.

PARRISH, C.J., and CROW, P.J., concur.