**Farrell Don EPPERSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 20675.

Missouri Court of Appeals,
Southern District.
Division Two.

Aug. 6, 1996.

Rose M. Wibbenmeyer, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Christine M. Blegen, Assistant Attorney General, Jefferson City, for respondent.

CROW, Presiding Judge.

Appellant, Farrell Don Epperson, was charged with three counts of forcible rape and four counts of forcible sodomy. On August 23, 1994, pursuant to a plea agreement, he pled guilty to three of the sodomy counts. In exchange for the pleas, the prosecutor dismissed the other sodomy count and the three rape counts, and agreed to refrain from filing additional charges. There was no provision in the agreement regarding the sentences Appellant would receive.

Two days later, the trial court sentenced Appellant to ten years' imprisonment on each count to which he pled guilty, the sentences to run consecutively.

After delivery to the Department of Corrections, Appellant filed a timely motion to vacate the judgment and sentences per Rule 24.035.[1] The motion court heard evidence and denied relief. This appeal followed.

The sole point relied on in Appellant's brief avers the motion court erred in denying relief in that Appellant's constitutional right to effective assistance of counsel was abridged when he pled guilty. Appellant maintains his lawyer (plea counsel) rendered ineffective assistance by telling Appellant:

"... that he should plead guilty before August 28, 1994, or be required to serve a minimum prison term of eighty-five percent of his sentence under section 558.019 RSMo 1994, without having reviewed a copy of this statutory section which clearly indicates that it would only apply to those offenses committed on or after August 28, 1994."

Section 558.019, RSMo 1994, referred to in Appellant's point relied on, took effect August 28, 1994, replacing a statute bearing the same number. The August 28, 1994, version reads, in pertinent part:

"....

3. ... any defendant who has pleaded guilty to or has been found guilty of a dangerous felony as defined in section 556.061, RSMo, and is committed to the department of corrections shall be required to serve a minimum prison term of eighty-five percent of the sentence imposed by the court or until the defendant attains seventy years of age, and has served at least forty percent of the sentence imposed, whichever occurs first.

...."

---

1. Rule 24.035 was amended effective January 1, 1996. Paragraph "(m)" of the current version provides that if sentence is pronounced prior to January 1, 1996, post-conviction relief shall continue to be governed by the provisions of Rule 24.035 in effect on the date the motion was filed or December 31, 1995, whichever is earlier. Appellant filed his motion October 31, 1994; consequently, references to Rule 24.035 in this opinion are to the version in effect that date.

7. The provisions of this section shall apply only to offenses occurring on or after August 28, 1994."

Section 556.061, RSMo 1994, referred to in subsection 3 of § 558.019 (above), reads, in pertinent part:

"In this code, unless the context requires a different definition, the following shall apply:

. . . .

(8) 'Dangerous felony' means the felonies of ... forcible rape, forcible sodomy . . .;

. . . ."

Questioned by the plea court during the guilty plea proceeding, Appellant stated he understood the range of punishment for each count of forcible sodomy was "[f]ive to life." [2] Appellant also understood the plea court was not obligated to impose any specific sentence.

After the plea court's questioning, plea counsel asked Appellant additional questions regarding his decision to plead guilty. The dialogue pertinent to Appellant's point relied on is:

"Q. You and I also have discussed . the change in the law that will be taking place on August 28; is that correct?

A. Yes, sir.

Q. And we've discussed whether or not it's necessary to be sentenced before August 28 for the new law to apply to you or not to apply to you?

A. Yes, sir.

Q. And we've also discussed whether or not it's necessary for you to be delivered into the Department of Corrections in order for the new law not to apply to you; haven't we?

A. Yes, sir.

Q. And you know that the Public Defender's Office and that some other lawyers are taking the position that if the crime was committed before August 28, that the new law doesn't apply to you? .

A. Yes, sir.

Q. And still other people are taking the position that if you committed the crime before August 28 and you pled guilty and was sentenced before August 28, it didn't apply to you, even if you were not delivered; is that correct?

A. Yes, sir.

Q. And I've told you that I don't have a crystal ball to look into, so I don't know what the next Court of Appeals decision is going to say; didn't I?

A. Right.

Q. And that the safe thing to do, if you wanted to plead guilty and have the old law apply to you—the safe thing to do was to be sentenced and delivered before August 28; is that correct?

A. That's correct.

Q. Now, you understand that [the plea court] has a lot of stuff to look at?[ [3]]

A. Yes, I do.

Q. And that I can't guarantee you that you're going to be delivered before August 28; you understand that?

A. Yes, sir."

At the evidentiary hearing in the motion court, Appellant testified that at the time he entered the pleas of guilty, he was under the impression that he "would receive three ten-year sentences ran concurrent." Appellant explained: "The reason I was under that impression is I was told that a under-the-

2. A five-page "Petition to Enter Plea of Guilty," signed by Appellant and presented to the plea court, confirmed Appellant understood the range of punishment was life imprisonment or a term of years not less than five years.

3. The plea agreement provided that before sentencing, the plea court would examine the tran-

script of the preliminary hearing, the reports of medical examinations of the victims (there was a different victim in each count to which Appellant pled guilty), and a report of "psychological testing" of Appellant.

table agreement was made ... [b]etween the Judge and my lawyer." Appellant's testimony continued:

"Q. And is that why you filed this motion later?

A. That and the reason that I was told that if I didn't plead guilty before August the 28th, that I would have to serve eighty-five percent of the time and that three charges now would be better than if I ended up with one charge at a later date.... Now I see that I didn't get three tens ran concurrent and also I know that the August the 28th law had no affect [sic] on me."

Plea counsel, called as a witness in the motion court, testified there was no agreement between him and the plea court regarding the sentences Appellant would receive. Plea counsel's testimony continued:

"Q. Now let me ask you about this eighty-five percent rule—all right? Are you aware that as to certain sentences, there is now a rule concerning the length of sentence which must be served before the Defendant is eligible for parole?

A. Yes.

Q. All right. And are you aware that that law came into effect on August 28th, 1994?

A. Yes.

Q. Were you aware at the time that you counseled Mr. Epperson as to whether he should plead guilty and what sentence he could possibly receive, how that rule would affect this proceeding?

A. What Don and I talked about was that I did not know how it would affect the proceeding. At that time, we did not have the copy of it. What we had was the publication from Lawyers Weekly. And Don and I discussed the fact that—I contacted the Public Defender system because I know they do a lot of work with

sentences and they were taking the position that it did not apply to offenses that had occurred before August 28th. However, I told Don I didn't know the answer and that if he wanted to be sure that it did not apply, that he would need to plead and be delivered before August the 28th—that's what I told him. I also explained to him that I had very little confidence in the Appellate Courts following what I considered to be the plain reading of the statutes and I discussed with him what the Appellate Courts had done with some of the DWI statutes and the administrative DWI statutes and that I could not predict what the Appellate Courts would do with them.

. . . .

Q. ... you've identified as one of your concerns about going to trial in Mr. Epperson's case the possibility that he might have to remain incarcerated eighty-five percent of any sentence received after the 28th of August that year.

A. Well, I identified that as one of the things that I talked to him about and something that he should consider is that we did not know what affect [sic] that the law would have on his case if he pled guilty after August 28th.

Q. What was the source of your information about the amendment to Section 558.019?

A. I believe it came from Lawyers Weekly and from the Defender's office. I know Dave Mills and I discussed it with him. I do not believe I had a copy of it, other than what Lawyers Weekly said.

Q. Do you recall reading a copy of the statute as amended in Lawyers Weekly or was it just a narrative about it?

A. I don't recall which it was.

. . . .

Q. Your advice to Mr. Epperson was that the risk was the least if he pled

guilty and was sentenced and delivered to the Department of Corrections prior to the effective date of the amended statute. Was that your advice?

A.  That the risk that the eighty-five percent rule would apply was least if that happened."

The motion court rejected Appellant's claim that he believed he would receive three concurrent ten-year sentences. Appellant does not attack that ruling in this appeal.

The motion court further found:

"The Movant next claimed his guilty plea was involuntary because he was forced to make a hasty decision as to whether to plead guilty based on his counsel's insistence Movant must plead guilty before August 28, 1994, or face the possibility he would be ineligible for 85% of his sentence for parole under Section 558.019, RSMo, which took effect August 28, 1994. The Court finds Movant was advised by [plea counsel] at the time he pleaded guilty that it was possible that if he were sentenced after August 28, 1994, he would face the application of Section 558.019. [Plea counsel] asked Movant at his guilty plea hearing whether they had discussed the prospective change in Section 558.019, and Movant replied they had. [Plea counsel] further advised Movant it was an open question whether a person such as Movant whose crimes were committed before the effective date of the statute, would be subject to its provisions, as Movant so testified at the time he pleaded guilty and [plea counsel] testified at evidentiary hearing held herein. Movant and [plea counsel] agreed it was the 'safe thing to do' if Movant wished to plead guilty to do so before August 28 and foreclose the possibility Section 558.019 could apply to Movant under some judicial construction. Upon this factual record this Court finds no evidence from which it can conclude Movant's guilty plea was involuntary because [plea] counsel rushed him into doing

so because of the possibility Section 558.019 would apply to Movant. Further, the Court finds that Movant elected to plead guilty after having discussed with [plea counsel] that possibility and deciding the guilty plea was in Movant's best interests considering that possibility." [References to the transcript by the motion court in the above passage have been deleted.]

■  Our review is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 24.035(j); *Wilson v. State*, 813 S.W.2d 833, 835[5] (Mo. banc 1991). Such findings and conclusions are deemed clearly erroneous only if, after reviewing the entire record, we are left with the definite and firm impression that a mistake has been made. *Id.*

■  To prevail on a claim of ineffective assistance of counsel, a prisoner must show (1) his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances, and (2) the prisoner was thereby prejudiced. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). To demonstrate prejudice, a prisoner who pled guilty must show that but for the errors of counsel, the prisoner would not have pled guilty and would have insisted on a trial. *Hagan v. State*, 836 S.W.2d 459, 463–64[14] (Mo. banc 1992).

To facilitate discussion of Appellant's claim of error, we henceforth refer to the version of § 558.019 that took effect August 28, 1994, as "the current § 558.019." [4]

■  Appellant testified in the motion court that he was "willing to go to trial now" because he knows the current § 558.019 does not apply to the crimes to which he pled guilty. The motion court evidently treated that testimony as an avowal by Appellant that he would have spurned the plea agreement and gone to trial but for plea counsel's advice about the current § 558.019.

■  The motion court was not required to believe Appellant's testimony. *Keating v.*

4.  That version is still in effect.

*State,* 870 S.W.2d 273, 275[2] (Mo.App. S.D. 1994); *Moore v. State,* 853 S.W.2d 378, 380[5] (Mo.App. S.D.1993). The motion court's findings demonstrate the motion court disbelieved Appellant. A close reading of the findings reveals the motion court carefully found that Appellant and plea counsel agreed that *if* Appellant wished to plead guilty, the safest way to foreclose the possibility that the current § 558.019 would apply to Appellant's sentences would be for Appellant to plead guilty before August 28, 1994.

That finding is supported by the dialogue between Appellant and plea counsel at the guilty plea proceeding. As we have seen, plea counsel established that Appellant understood the "safe thing to do" *if* he wanted to plead guilty was to enter the pleas and be sentenced and delivered to the Department of Corrections before August 28, 1994.

Appellant was facing seven charges; each had a maximum permissible punishment of life imprisonment. The plea agreement eliminated four charges and ensured no others would be filed. By pleading guilty before August 28, 1994, Appellant endeavored to make certain the current § 558.019 would not apply to his sentences.

The thrust of the motion court's findings is that plea counsel's advice about the current § 558.019 was not the reason Appellant accepted the plea agreement, but was instead the reason Appellant, upon deciding to accept the agreement, pled guilty and was sentenced prior to August 28, 1994.

Consequently, even if plea counsel's advice about the current § 558.019 was substandard—an issue we need not decide—Appellant obviously failed to convince the motion court that but for such advice he would not have pled guilty and would have gone to trial on all counts. Accordingly, the motion court's denial of relief is not clearly erroneous. *Hagan,* 836 S.W.2d at 463–64[14].

The order of the motion court is affirmed.

MONTGOMERY, C.J., and PARRISH, J., concur.