Christopher **BOHLEN**,
Movant–Appellant,

v.

**STATE** of Missouri,
Respondent–Respondent.

No. 52342.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 27, 1987.

Motion for Rehearing and/or Transfer
Denied Dec. 22, 1987.

Application to Transfer Denied
Feb. 17, 1988.

Toby H. Hollander, St. Louis, for movant-appellant.

William L. Webster, Atty. Gen., Jatha B. Sadowski, Asst. Atty. Gen., Jefferson City, for respondent-respondent.

REINHARD, Judge.

Movant appeals after the denial of his Rule 27.26 motion following an evidentiary hearing. We affirm.

Movant was found guilty by a jury in 1982 of three counts of first-degree robbery and sentenced by the court as a persistent offender to consecutive terms of fifteen years on each count. We affirmed the conviction but reversed and remanded for resentencing because of a deficiency in the proof that movant was a persistent offender. *State v. Bohlen,* 670 S.W.2d 119 (Mo.App.1984). After remand, we affirmed the sentencing in *State v. Bohlen,* 698 S.W. 2d 577 (Mo.App.1985).

The evidence supporting movant's conviction was that shortly after 12:00 noon on April 17, 1981, he and others entered a jewelry store in a shopping mall, where, at gun point, they forced the store manager, another employee, and two customers to lie on the floor in a back room. The robbers took about $21,000.00 worth of merchandise including several butane cigarette lighters from the store and wrist watches from the store manager and the employee. One witness identified movant as having been in the store during the robbery and said she saw him jump over a counter in the store. Another witness saw four males and two females run from the store. A third witness identified movant as one of a group of black persons he saw running from the shopping mall onto the parking lot. The third witness, who was as close as 15 feet from movant and observed him for a total of about 60 seconds, said that movant drove the getaway car. There was

evidence from which the jury could have inferred that movant, at the time of an arrest two weeks later, had in his possession a butane cigarette lighter of the type and brand as the lighters taken in the robbery. A jewelry inventory tag was found in the garage of a house where movant appeared to have been residing. The jewelry store owner and the manager identified the tag as being from a ring taken in the robbery and said that if the ring had been sold, the tag would have been retained at the store. Although other witnesses for the state were unable to identify movant as a participant, none said he was not involved.

In his motion, movant alleged, among other matters, that his counsel was ineffective because he failed to adequately investigate an alibi defense, including two witnesses who could place movant at another location at the time of the robbery; he failed to adequately cross-examine the state's identification witnesses regarding movant's prominent gold tooth; and he failed to object to the admission into evidence of a blue hat that was not shown to be connected to movant or the crime. Movant also claims that our remand after his first appeal for taking additional evidence on the persistent offender issue subjected him to double jeopardy.

At the evidentiary hearing conducted September 2, 1986, the court heard testimony from movant, his trial attorney, the state's attorney who tried the case, and the two witnesses movant contends his counsel failed to interview. Movant testified that his trial counsel was appointed sometime after his October 14, 1981, arrest in Houston, Texas. He gave his trial counsel the names of two hair stylists, Rickie Martin and Cornell Whitfield, who, he said, could provide him with an alibi. Movant also gave his attorney the name of Lisel Spivey who had pleaded guilty to the jewelry store robbery and, presumably, would testify that movant was not a participant.

Martin testified that movant arrived at the Maison de Bleu hair salon about 11:00 a.m. on April 17, 1981, and remained three or four hours. About a week or two later,

Martin said, movant called to tell him his attorney would be contacting him. Martin said movant contacted him repeatedly by telephone, but it wasn't until "months" after April 17 that movant asked him if he could testify that he was in the salon on that particular date. Martin said he never spoke to movant's attorney.

Whitfield said when he arrived at the salon around 12:30 to 1:00 p.m. on April 17, movant was already there and that movant remained until 2:00 or 3:00 p.m. "A good while later" movant called him to tell him his attorney would be calling. Whitfield said "a month later" or "months later" an attorney called him at the salon and asked "was [movant] in the shop at a certain time, and I said he was." Martin and Whitfield both testified that the salon's appointment books had been disposed of or were lost when the shop changed location and the old building was demolished.

Movant's trial attorney testified that movant advised him of several possible alibis including his employer, his girlfriend, "a woman who was working at a job corps training facility in St. Louis," and the hair styling salon. Counsel investigated the employer, the girlfriend, and the woman, and concluded none could provide an alibi. Concerning the hair styling salon, the attorney stated that he spoke to "somebody" at the salon but

> [t]his morning is the first time that I believe I have ever heard [of Martin or Whitfield]. The woman who owned the shop, Velma Frank, I believe her name was mentioned to me. And I did make, if my memory serves me correctly, I did make a call to the hair salon, and I am sure the question I asked [was] "were you able to confirm Mr. Bohlen's presence in your salon during this period of time" [and] that information was not forthcoming, or obviously I would have called her as a witness.

Counsel stated he was uncertain whether the person he spoke to identified herself as the owner of the salon, although, he said, "[t]he name Velma Frank rings a bell." Asked if he ever spoke to Martin or Whitfield, he replied, "I don't believe I did.

Maybe I did speak with one of the gentlemen. I don't know. I believe it was Velma Franks. But it's quite possible it was him."

Concerning Lisel Spivey, counsel said he drove to the Renz correctional facility near Jefferson City where she was incarcerated and interviewed her "and she did indicate she may have some favorable testimony." Counsel said he was reluctant to use her as a witness, however, because she had been convicted of "numerous felonies" and he believed she "would not be what I would call a credible witness and she probably would have done more harm than good to [movant's] defense. And we [counsel and movant] talked about it." Counsel did subpoena Spivey and had her brought to the trial, but he did not call her to testify. Movant had testified at the hearing that his trial counsel told him he would not call Lisel Spivey to testify because the prosecutor "would eat her alive."

Rick Barry, who tried the case on behalf of the state, testified that he had told movant's attorney prior to trial that he thought Spivey would be unreliable as a witness and that "she would come off unfavorably before the jury." Barry also stated that he "also believed that she had made some statements to the police at the present time of her arrest, which would have come out, which would not have helped [movant]."

The court denied the motion and issued extensive findings of fact and conclusions of law. In its findings, the court dealt with each of movant's allegations of ineffectiveness and found them against movant. In summary, the court found:

> The trial transcript depicts a defendant represented by a zealous and well prepared attorney. The transcript is punctuated by timely and strenuous objection by movant's counsel. Trial counsel took careful aim at the weakest portions of the State's case and pursued the avenue most advantageous to acquittal. Clearly, the transcript provides irrefutable proof of the competence and effectiveness of movant's trial counsel.
>
> The plain truth is that the State presented a strong case against movant.

There is every indication that no defense counsel could have achieved a result for movant different than the one here.

■ Our review is limited to determining whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 27.26(j); *Richardson v. State*, 719 S.W.2d 912, 915 (Mo.App.1986). The motion court's findings and conclusions are clearly erroneous only if a review of the entire record leaves the appellate court with a definite and firm impression that a mistake has been made. *Richardson*, 719 S.W.2d at 915. The motion court is not required to believe movant's testimony at a Rule 27.26 hearing, *Porter v. State*, 678 S.W.2d 2, 3 (Mo.App.1984), and an appellate court gives due regard to the motion court's opportunity to hear witnesses and defers to its determination of credibility. *Houston v. State*, 623 S.W.2d 565, 567 (Mo.App.1981).

■ Movant's principal complaint concerns the alleged failure of his trial counsel to investigate potential alibi witnesses. To establish ineffective assistance of counsel, a movant must prove his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would use under similar circumstances and that he suffered prejudice as a result. Counsel has a duty to make a reasonable investigation or to make a reasonable decision that a particular investigation is unnecessary. *Richardson*, 719 S.W.2d at 915. Counsel's duty to investigate the case against his client includes contacting potential witnesses named by the defendant who might aid in his defense. *Poole v. State*, 671 S.W.2d 787, 788 (Mo.App.1983). Whether it is reasonable for defense counsel not to interview a potential alibi witness is to be determined under the specific circumstances of each case. *See Sanders v. State*, 738 S.W.2d 856, 859 (Mo. banc 1987).

■ Movant advised his trial counsel of several potential alibis that appear to us to be mutually exclusive. Counsel investigated the alibis, although we believe that had they been wholly contradictory it would not have been unreasonable for counsel to have

discounted altogether the possibility of an alibi defense. In any event, counsel testified that prior to the motion hearing he had not heard of Martin or Whitfield. The motion court stated it believed counsel's testimony on this issue. *See Mullen v. State,* 678 S.W.2d 1 (Mo.App.1984).[1]

█ Movant also alleges his trial counsel was ineffective for failing to adequately cross-examine about his gold tooth and for failing to object to the admission into evidence and use of a blue cap. From our examination of the record we conclude the motion court's findings and conclusions on these two issues and on the issue of alibi investigation are not clearly erroneous.[2]

█ Movant's double jeopardy allegation was ruled against him on appeal after his resentencing, *see Bohlen,* 698 S.W.2d at 578; therefore, this point is without merit. *See also King v. State,* 721 S.W.2d 97 (Mo.App.1986); *State v. Holt,* 708 S.W.2d 233 (Mo.App.1986); *State v. Lee,* 660 S.W.2d 394 (Mo.App.1983); *State v. Cullen,* 646 S.W.2d 850 (Mo.App.1982).

Judgment affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.

---

**1.** Movant's argument that the motion court failed to make a finding about the credibility of Martin and Whitfield is answered, at least indirectly, by this finding of the motion court that counsel was unaware of them:

> Ricky Martin and [Cornell Whitfield] testified at the Motion 27.26 hearing that they could give an alibi for movant. However, trial counsel testified that this was the first time that trial counsel had ever heard of these two people. Trial counsel said their names were not provided to him by movant, and neither of them had ever contacted trial counsel. Trial counsel said that he would have used these two witnesses if he had known of their existence. The Court believes and accepts testimony of trial counsel.

**2.** We note that the motion court, in addition to not finding counsel ineffective, also concluded that "no defense counsel could have achieved a result for movant different than the one here." Thus this case might have been resolved in part on a lack of prejudice alone, *see Sanders* at 856–857; *Richardson,* 719 S.W.2d at 915. However, because we agree with the motion court that trial counsel's representation was not ineffective, we need not address the prejudice issue.