CASPARI, SUPERINTENDENT, MISSOURI
EASTERN CORRECTIONAL CENTER,
ET AL. *v.* BOHLEN

No. 92–1500.   Argued December 6, 1993—Decided February 23, 1994

384

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BLACKMUN, SCALIA, KENNEDY, SOUTER, THOMAS, and GINS-BURG, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 397.

*Frank A. Jung*, Assistant Attorney General of Missouri, argued the cause for petitioners. With him on the briefs was *Jeremiah W. (Jay) Nixon*, Attorney General.

*William K. Kelley* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Days, Acting Assistant Attorney General Keeney, Deputy Solicitor General Bryson,* and *Ronald J. Mann.*

*Richard H. Sindel*, by appointment of the Court, 510 U. S. 806, argued the cause and filed a brief for respondent.*

---

*Briefs of *amici curiae* urging reversal were filed for Cook County, Illinois, by *Jack O'Malley, Renee G. Goldfarb,* and *Theodore Fotios Burtzos*; and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger* and *Charles L. Hobson.*

*Michael D. Gooch* filed a brief for the National Legal Aid and Defender Association et al. as *amici curiae* urging affirmance.

A brief of *amici curiae* was filed for the State of Arkansas et al. by *Winston Bryant*, Attorney General of Arkansas, *Clint Miller*, Senior Assistant Attorney General, and *Kyle R. Wilson*, Assistant Attorney General, *John M. Bailey*, Chief State's Attorney of Connecticut, *Charles M. Oberly III*, Attorney General of Delaware, *Larry EchoHawk*, Attorney General of Idaho, *Mike Moore*, Attorney General of Mississippi, *Joseph P. Mazurek*, Attorney General of Montana, *Don Stenberg*, Attorney General of Nebraska, *Frankie Sue Del Papa*, Attorney General of Nevada, *Carol Henderson*, Deputy Attorney General of New Jersey, *T. Travis Medlock*, Attorney General of South Carolina, and *Joseph B. Meyer*, Attorney General of Wyoming.

JUSTICE O'CONNOR delivered the opinion of the Court.

In *Bullington* v. *Missouri*, 451 U. S. 430 (1981), we held that a defendant sentenced to life imprisonment following a trial-like capital sentencing proceeding is protected by the Double Jeopardy Clause against imposition of the death penalty if he obtains reversal of his conviction and is retried and reconvicted. In this case we are asked to decide whether the Double Jeopardy Clause prohibits a State from twice subjecting a defendant to a *noncapital* sentence enhancement proceeding.

## I

Respondent and others entered a jewelry store in St. Louis County, Missouri, on April 17, 1981. Holding store employees and customers at gunpoint, they stole money and jewelry. After a jury trial, respondent was convicted on three counts of first-degree robbery. See Mo. Rev. Stat. § 569.020 (1978). The authorized punishment for that offense, a class A felony, is "a term of years not less than ten years and not to exceed thirty years, or life imprisonment." Mo. Rev. Stat. § 558.011.1(1) (Supp. 1982).

Under Missouri law, the jury is to "assess and declare the punishment as a part of [the] verdict." § 557.036.2. The judge is then to determine the punishment "having regard to the nature and circumstances of the offense and the history and character of the defendant," § 557.036.1, although the sentence imposed by the judge generally cannot be more severe than the advisory sentence recommended by the jury. § 557.036.3. If the trial judge finds the defendant to be a "persistent offender," however, the judge sets the punishment without seeking an advisory sentence from the jury. §§ 557.036.4, 557.036.5. A persistent offender is any person "who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." § 558.016.3. The judge must find beyond a reasonable doubt that the defendant is a persistent offender. § 558.021. For a defendant who has committed a class A felony, a finding of persistent-

offender status shifts the sentencing decision from the jury to the judge but does not alter the authorized sentencing range. §§ 557.036.4(2), 558.016.6(1).

The trial judge in this case sentenced respondent as a persistent offender to three consecutive terms of 15 years in prison. The Missouri Court of Appeals affirmed respondent's convictions. *State* v. *Bohlen,* 670 S. W. 2d 119 (1984). The state court reversed respondent's sentence, however, because "although [respondent] was sentenced by the judge as a persistent offender no proof was made of the prior convictions." *Id.,* at 123. Following Missouri practice, see *State* v. *Holt,* 660 S. W. 2d 735, 738–739 (Mo. App. 1983), the court remanded for proof of those convictions and resentencing.

On remand, the State introduced evidence of four prior felony convictions. Rejecting respondent's contention that allowing the State another opportunity to prove his prior convictions violated the Double Jeopardy Clause, the trial judge found respondent to be a persistent offender and again sentenced him to three consecutive 15-year terms. App. A–29, A–35. The Missouri Court of Appeals affirmed: "The question of double jeopardy was not involved because those provisions of the Fifth Amendment have been held not to apply to sentencing." *State* v. *Bohlen,* 698 S. W. 2d 577, 578 (1985), citing *State* v. *Lee,* 660 S. W. 2d 394, 399 (Mo. App. 1983). The Missouri Court of Appeals subsequently affirmed the trial court's denial of respondent's motion for postconviction relief. *Bohlen* v. *State,* 743 S. W. 2d 425 (1987).

In 1989, respondent filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Missouri. The District Court, adopting the report and recommendation of a Magistrate, denied the petition. App. to Pet. for Cert. A25–A26. The court rejected respondent's contention that the Double Jeopardy Clause barred the State from introducing evidence of respondent's

prior convictions at the second sentencing hearing. *Id.,* at A37–A49.

The United States Court of Appeals for the Eighth Circuit reversed. 979 F. 2d 109 (1992). Based on its conclusion that "[t]he persistent offender sentenc[e] enhancement procedure in Missouri has protections similar to those in the capital sentencing hearing in *Bullington,*" *id.,* at 112, the court stated that "it is a short step to apply the same double jeopardy protection to a non-capital sentencing hearing as the Supreme Court applied to a capital sentenc[ing] . . . hearing." *Id.,* at 113. The court held that taking that step did not require the announcement of a "new rule" of constitutional law, and thus that granting habeas relief to respondent would not violate the nonretroactivity principle of *Teague* v. *Lane,* 489 U. S. 288 (1989) (plurality opinion). The Court of Appeals accordingly directed the District Court to grant respondent a writ of habeas corpus. 979 F. 2d, at 115.

We granted certiorari, 508 U. S. 971 (1993), and now reverse.

## II

We have consistently declined to consider issues not raised in the petition for a writ of certiorari. See this Court's Rule 14.1(a) ("Only the questions set forth in the petition, or fairly included therein, will be considered by the Court"). In *Yee* v. *Escondido,* 503 U. S. 519 (1992), for example, the question presented was whether certain governmental action had effected a *physical* taking of the petitioner's property; we held that the question whether the same action had effected a *regulatory* taking, while "related" and "complementary" to the question presented, was not fairly included therein. *Id.,* at 537. In *Izumi Seimitsu Kogyo Kabushiki Kaisha* v. *U. S. Philips Corp.,* 510 U. S. 27 (1993) *(per curiam),* the question presented in the petition was whether the courts of appeals should routinely vacate district court judgments when cases are settled while on appeal; we held that the "analytically and factually" distinct issue whether the petitioner was im-

properly denied leave to intervene in the court below was not fairly included in the question presented. *Id.*, at 32. See also *American Nat. Bank & Trust Co. of Chicago* v. *Haroco, Inc.*, 473 U. S. 606, 608 (1985) *(per curiam)*.

The primary question presented in the petition for a writ of certiorari in this case was "[w]hether the Double Jeopardy Clause . . . should apply to successive non-capital sentence enhancement proceedings." Pet. for Cert. 1. The State argues that answering that question in the affirmative would require the announcement of a new rule of constitutional law in violation of *Teague* and subsequent cases. We conclude that this issue is a subsidiary question fairly included in the question presented.

The nonretroactivity principle *prevents* a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final. See, *e. g., Stringer* v. *Black*, 503 U. S. 222, 227 (1992). A threshold question in every habeas case, therefore, is whether the court is obligated to apply the *Teague* rule to the defendant's claim. We have recognized that the nonretroactivity principle "is not 'jurisdictional' in the sense that [federal courts] . . . must raise and decide the issue *sua sponte.*" *Collins* v. *Youngblood*, 497 U. S. 37, 41 (1990) (emphasis omitted). Thus, a federal court may, but need not, decline to apply *Teague* if the State does not argue it. See *Schiro* v. *Farley*, 510 U. S. 222, 228–229 (1994). But if the State does argue that the defendant seeks the benefit of a new rule of constitutional law, the court *must* apply *Teague* before considering the merits of the claim. See *Graham* v. *Collins*, 506 U. S. 461, 466–467 (1993).

In this case, the State argued in the petition, as it had in the courts below and as it does in its brief on the merits, that the nonretroactivity principle barred the relief sought by respondent. In contrast to *Yee*, which involved a claim that was related but not subsidiary, and *Izumi*, in which the intervention question was a procedural one wholly divorced

from the question on which we granted review, the *Teague* issue raised by the State in this case is a necessary predicate to the resolution of the question presented in the petition. Cf. *Cuyler* v. *Sullivan*, 446 U. S. 335, 342–343, n. 6 (1980). We therefore proceed to consider it.

## III

"[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague* v. *Lane, supra*, at 301. In determining whether a state prisoner is entitled to habeas relief, a federal court should apply *Teague* by proceeding in three steps. First, the court must ascertain the date on which the defendant's conviction and sentence became final for *Teague* purposes. Second, the court must "[s]urve[y] the legal landscape as it then existed," *Graham* v. *Collins, supra*, at 468, and "determine whether a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution," *Saffle* v. *Parks*, 494 U. S. 484, 488 (1990). Finally, even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle. See *Gilmore* v. *Taylor*, 508 U. S. 333, 345 (1993).

## A

A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied. See *Griffith* v. *Kentucky*, 479 U. S. 314, 321, n. 6 (1987). The Missouri Court of Appeals denied respondent's petition for rehearing on October 3, 1985, and respondent did not file a petition for a writ of certiorari. Respondent's conviction and sentence therefore

became final on January 2, 1986—91 days (January 1 was a legal holiday) later. 28 U. S. C. § 2101(c); see this Court's Rules 13.4 and 30.1.

## B

In reviewing the state of the law on that date, we note that it was well established that there is no double jeopardy bar to the use of prior convictions in sentencing a persistent offender. *Spencer* v. *Texas*, 385 U. S. 554, 560 (1967). Cf. *Moore* v. *Missouri*, 159 U. S. 673, 678 (1895). Respondent's claim, however, is that the State's failure to prove his persistent-offender status at his first sentencing hearing operated as an "acquittal" of that status, so that he cannot be *again* subjected to a persistent-offender determination. See *United States* v. *Wilson*, 420 U. S. 332, 343 (1975) ("When a defendant has been acquitted of an offense, the Clause guarantees that the State shall not be permitted to make repeated attempts to convict him").

At first blush, respondent's argument would appear to be foreclosed by the fact that "[h]istorically, the pronouncement of sentence has never carried the finality that attaches to an acquittal." *United States* v. *DiFrancesco*, 449 U. S. 117, 133 (1980). In that case, we upheld the constitutionality of 18 U. S. C. § 3576, a pre-Guidelines statute that allowed the United States to appeal the sentence imposed on a defendant adjudged to be a "dangerous special offender," and allowed the court of appeals to affirm the sentence, impose a different sentence, or remand to the district court for further sentencing proceedings. A review of our prior cases led us to the conclusion that "[t]his Court's decisions in the sentencing area clearly establish that a sentence does not have the qualities of constitutional finality that attend an acquittal." 449 U. S., at 134; see also *id.*, at 135, citing *Chaffin* v. *Stynchcombe*, 412 U. S. 17 (1973); *North Carolina* v. *Pearce*, 395 U. S. 711 (1969); *Bozza* v. *United States*, 330 U. S. 160 (1947); and *Stroud* v. *United States*, 251 U. S. 15 (1919).

Respondent acknowledges our traditional refusal to extend the Double Jeopardy Clause to sentencing, but contends that a different result is compelled in this case by *Bullington* v. *Missouri,* 451 U. S. 430 (1981), and *Arizona* v. *Rumsey,* 467 U. S. 203 (1984). In *Bullington,* the defendant was convicted of capital murder and sentenced to life imprisonment. After he obtained a reversal of his conviction on appeal and was reconvicted, the State again sought the death penalty. We recognized the general principle that "[t]he imposition of a particular sentence usually is not regarded as an 'acquittal' of any more severe sentence that could have been imposed." 451 U. S., at 438. We nonetheless held that because Missouri's "presentence hearing resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence," *ibid.,* the first jury's refusal to impose the death penalty operated as an acquittal of that punishment. In *Rumsey,* we extended the rationale of *Bullington* to a capital sentencing scheme in which the judge, as opposed to a jury, had initially determined that a life sentence was appropriate. 467 U. S., at 212.

Both *Bullington* and *Rumsey* were capital cases, and our reasoning in those cases was based largely on the unique circumstances of a capital sentencing proceeding. In *Bullington* itself we distinguished our contrary precedents, particularly *DiFrancesco,* on the ground that "[t]he history of sentencing practices is of little assistance to Missouri in this case, since the sentencing procedures for capital cases instituted after the decision in *Furman* [v. *Georgia,* 408 U. S. 238 (1972),] are unique." 451 U. S., at 441–442, n. 15 (internal quotation marks omitted). We recognized as much in *Pennsylvania* v. *Goldhammer,* 474 U. S. 28 (1985) *(per curiam):* "[T]he decisions of this Court 'clearly establish that a sentenc[ing *in a noncapital case*] does not have the qualities of constitutional finality that attend an acquittal.'" *Id.,* at 30, quoting *DiFrancesco, supra,* at 134 (bracketed phrase added by the *Goldhammer* Court; emphasis added).

In *Strickland* v. *Washington*, 466 U. S. 668 (1984), we held that the same standard for evaluating claims of ineffective assistance of counsel applies to trials and to capital sentencing proceedings because "[a] capital sentencing proceeding . . . is sufficiently like a trial in its adversarial format and in the existence of standards for decision, see *[Bullington]*, that counsel's role in the proceeding is comparable to counsel's role at trial." *Id.*, at 686–687. Because *Strickland* involved a capital sentencing proceeding, we left open the question whether the same test would apply to noncapital cases: "We need not consider the role of counsel in an ordinary sentencing, which may involve informal proceedings and standardless discretion in the sentencer, and hence may require a different approach to the definition of constitutionally effective assistance." *Id.*, at 686; see also *id.*, at 704–705 (Brennan, J., concurring in part and dissenting in part) ("'Time and again the Court has condemned procedures in capital cases that might be completely acceptable in an ordinary case. See, *e. g.*, *[Bullington]*'") (quoting *Barefoot* v. *Estelle*, 463 U. S. 880, 913–914 (1983) (Marshall, J., dissenting)). See also *Spaziano* v. *Florida*, 468 U. S. 447, 458 (1984).

While our cases may not have foreclosed the application of the Double Jeopardy Clause to noncapital sentencing, neither did any of them apply the Clause in that context. On the contrary, *Goldhammer* and *Strickland* strongly suggested that *Bullington* was limited to capital sentencing. We therefore conclude that a reasonable jurist reviewing our precedents at the time respondent's conviction and sentence became final would not have considered the application of the Double Jeopardy Clause to a noncapital sentencing proceeding to be dictated by our precedents. Cf. *Stringer* v. *Black*, 503 U. S., at 236–237.

This analysis is confirmed by the experience of the lower courts. Prior to the time respondent's conviction and sentence became final, one Federal Court of Appeals and two

state courts of last resort had held that the Double Jeopardy Clause did not bar the introduction of evidence of prior convictions at resentencing in noncapital cases, *Linam* v. *Griffin*, 685 F. 2d 369, 374–376 (CA10 1982); *Durham* v. *State*, 464 N. E. 2d 321, 323–326 (Ind. 1984); *People* v. *Sailor*, 65 N. Y. 2d 224, 231–236, 480 N. E. 2d 701, 706–710 (1985), while another Federal Court of Appeals and two other state courts of last resort had held to the contrary, *Briggs* v. *Procunier*, 764 F. 2d 368, 371 (CA5 1985); *State* v. *Hennings*, 100 Wash. 2d 379, 386–390, 670 P. 2d 256, 259–262 (1983); *Cooper* v. *State*, 631 S. W. 2d 508, 513–514 (Tex. Crim. App. 1982). Moreover, the Missouri Court of Appeals had previously rejected precisely the same claim raised by respondent. *State* v. *Lee*, 660 S. W. 2d, at 399–400.

In its retroactivity analysis, the Court of Appeals dismissed the Tenth Circuit's decision in *Linam* as "ultimately based on trial error," 979 F. 2d, at 114, failing to recognize that the *Linam* court offered two "alternative bas[e]s for decision," 685 F. 2d, at 374—the second being that the "uniqueness of the death penalty unquestionably serves to distinguish *DiFrancesco* from *Bullington*," *id.*, at 375. Nor did the Court of Appeals acknowledge the relevant portion of the *Lee* decision, in which a Missouri court held that "the death penalty second stage trial in a capital murder case bears no similarity to a determination of persistent offender status by a judge upon the basis of largely formal evidence." 660 S. W. 2d, at 400. Instead, the court focused on whether there was any "*federal* holding resting squarely on the proposition that *Bullington* does not apply to non-capital sentenc[e] enhancement proceedings." 979 F. 2d, at 114 (emphasis added).

At oral argument in this Court, counsel for respondent candidly admitted that he did not know "exactly what State courts had decided or when" with respect to the applicability of the Double Jeopardy Clause to noncapital sentencing. Tr. of Oral Arg. 31. In fact, two state courts had held the Dou-

ble Jeopardy Clause inapplicable to noncapital sentencing prior to 1986. *Durham* v. *State, supra; People* v. *Sailor, supra.* Constitutional law is not the exclusive province of the federal courts, and in the *Teague* analysis the reasonable views of state courts are entitled to consideration along with those of federal courts. See *Butler* v. *McKellar,* 494 U. S. 407, 414 (1990).

In sum, at the time respondent's conviction and sentence became final this Court had not applied the Double Jeopardy Clause to noncapital sentencing, and indeed several of our cases pointed in the opposite direction. Two Federal Courts of Appeals and several state courts had reached conflicting holdings on the issue. Because that conflict concerned a "developmen[t] in the law over which reasonable jurists [could] disagree," *Sawyer* v. *Smith,* 497 U. S. 227, 234 (1990), the Court of Appeals erred in resolving it in respondent's favor.

Finally, to the limited extent our cases decided subsequent to the time respondent's conviction and sentence became final have any relevance to the *Teague* analysis, cf. *Graham* v. *Collins,* 506 U. S., at 472, 477, they are entirely consistent with our conclusion that the Court of Appeals announced a new rule in this case. See *Lockhart* v. *Nelson,* 488 U. S. 33, 37–38, n. 6 (1988) (reserving question whether Double Jeopardy Clause applies to noncapital sentencing); see also *Poland* v. *Arizona,* 476 U. S. 147, 155 (1986) (*"Bullington* indicates that the proper inquiry is whether the sentencer or reviewing court has 'decided that the prosecution has not proved its case' *that the death penalty is appropriate")* (emphasis in original); *Hunt* v. *New York,* 502 U. S. 964 (1991) (White, J., dissenting from denial of certiorari) (noting conflict on the question "whether the Double Jeopardy Clause applies to trial-like sentence enhancement proceedings in noncapital cases"). Because "[t]he 'new rule' principle . . . validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown

to be contrary to later decisions," *Butler* v. *McKellar, supra,* at 414, *a fortiori* it should protect a reasonable interpretation that is entirely consistent with subsequent cases.

## C

Neither of the two narrow exceptions to the nonretroactivity principle applies to this case. The first exception is for new rules that place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Teague* v. *Lane,* 489 U. S., at 307 (internal quotation marks omitted). Imposing a double jeopardy bar in this case would have no such effect. Respondent is subject to imprisonment on each of his three convictions, regardless of whether he is sentenced as a persistent offender. The second exception is for "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle* v. *Parks,* 494 U. S., at 495. Applying the Double Jeopardy Clause to successive noncapital sentencing is not such a groundbreaking occurrence. Persistent-offender status is a fact objectively ascertainable on the basis of readily available evidence. Either a defendant has the requisite number of prior convictions, or he does not. Subjecting him to a second proceeding at which the State has the opportunity to show those convictions is not unfair and will enhance the accuracy of the proceeding by ensuring that the determination is made on the basis of competent evidence.

## IV

The Court of Appeals recognized that it was a "stretch" to apply the Double Jeopardy Clause to a noncapital sentencing proceeding, 979 F. 2d, at 115, one that required "[e]xtending" the rationale of *Bullington,* 979 F. 2d, at 115, but held that because it was only a "short step," *id.,* at 113, the nonretroactivity principle was not violated. We disagree. The Court of Appeals erred in directing the District Court to grant re-

spondent a writ of habeas corpus because doing so required the announcement and application of a new rule of constitutional law. Because of our resolution of this case on *Teague* grounds, we have no occasion to decide whether the Double Jeopardy Clause applies to noncapital sentencing, or whether Missouri's persistent-offender scheme is sufficiently trial-like to invoke double jeopardy protections; nor need we consider the State's contention that *Bullington* should be overruled. The judgment of the Court of Appeals is

*Reversed.*

JUSTICE STEVENS, dissenting.

The nonretroactivity principle announced in the plurality opinion in *Teague* v. *Lane,* 489 U. S. 288 (1989), is a judge-made defense that can be waived. *Collins* v. *Youngblood,* 497 U. S. 37, 41 (1990). In recent years, the Court has fashioned harsh rules regarding waiver and claim forfeiture to defeat substantial constitutional claims. See, *e. g., Coleman* v. *Thompson,* 501 U. S. 722 (1991); *Murray* v. *Carrier,* 477 U. S. 478 (1986). If we are to apply such a strict approach to waiver in habeas corpus litigation, we should hold the warden to the same standard. Accordingly, given the treatment accorded the private litigant in *Izumi Seimitsu Kogyo Kabushiki Kaisha* v. *U. S. Philips Corp.,* 510 U. S. 27 (1993) *(per curiam),* I would hold that petitioner Caspari forfeited his *Teague* defense under this Court's Rule 14.1(a).

Distinguishing *Izumi,* the Court explains that the intervention question in that case was "wholly divorced from the question on which we granted review," whereas here the *Teague* issue "is a necessary predicate to the resolution of the question presented in the petition." *Ante,* at 389–390. Yet *Izumi* itself opened by acknowledging that it "would have to address" the intervention issue "[i]n order to reach the merits of this case." 510 U. S., at 28. It is no more "necessary" to answer the *Teague* question in this case than it was, for example, in *Collins, supra.*

On the merits, I agree with the Court of Appeals. Under Missouri law courts must make findings of fact that persistent-offender status is warranted for those convicted of certain offenses when the prosecutor establishes requisite facts by proof beyond a reasonable doubt.* That status subjects the defendant to more severe sentences, Mo. Rev. Stat. § 558.016.1 (Supp. 1982), and deprives him of the opportunity to have a jury sentence him, § 557.036.2. The sentence enhancement thus has the same legal effect as conviction of a separate offense; the separate sentencing hearing likewise is the practical equivalent of the trial. Missouri law acknowledges as much by properly requiring prosecutors to prove the factual predicate for the enhanced sentence beyond a reasonable doubt.

A defendant opposing such an enhancement undoubtedly has a constitutional right to counsel and to the basic procedural protections the Due Process Clause affords. I have no hesitation in concluding that these protections include the right not to be "twice put in jeopardy" for the same offense. U. S. Const., Amdt. 5. I would affirm the judgment of the Court of Appeals.

---

*Mo. Rev. Stat. § 558.021.1(2) (Supp. 1982). A "persistent offender" had previously been adjudged guilty of two or more felonies committed at different times. § 558.016.3. Missouri also mandates an enhanced sentence if the prosecutor proves that the defendant is a "dangerous offender"— meaning one who is being sentenced for a felony during which he knowingly "murdered or endangered or threatened the life" of another, who "knowingly inflicted or attempted or threatened to inflict serious physical injury" on another, or who is guilty of certain felonies. § 558.016.4. It is unfair to afford the prosecutor two opportunities to satisfy either provision.