**PUBLISH**

### UNITED STATES COURT OF APPEALS
### TENTH CIRCUIT

---

GERALD ALLEN,

      Petitioner-Appellant,

v.

LARRY REED, and JOHN SUTHERS, The
Attorney General of the State of Colorado,

      Respondents-Appellees,

COLORADO STATE PUBLIC
DEFENDER,

      Amicus Curiae.

No. 03-1185

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 03-Z-394)**

---

Philip A. Cherner, Denver, Colorado (Edward J. LaBarre, Colorado Springs,
Colorado, with him on the brief), for Petitioner-Appellant.

John D. Seidel, Assistant Attorney General (John Suthers, Attorney General, with
him on the briefs), Denver, Colorado, for Respondents-Appellees.

David S. Kaplan, Colorado State Public Defender, and Andrew C. Heher, Deputy
State Public Defender, filed a brief for Amicus Curiae Colorado State Public
Defender in support of Petitioner-Appellant.

---

Before **LUCERO**, **SEYMOUR** and **ANDERSON**, Circuit Judges.

_____

**SEYMOUR**, Circuit Judge.

_____

Gerald Allen is a state prisoner in the custody of the Colorado Department of Corrections (DOC). He filed a *pro se* 28 U.S.C. § 2254 petition for a writ of habeas corpus in federal district court contending his Colorado vehicular eluding sentence ran afoul of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The district court denied his petition and dismissed the action on the ground that *Apprendi* does not apply retroactively to cases on collateral review. Mr. Allen appeals that decision and we affirm.

# I

Mr. Allen was convicted by a jury in Colorado state court of one count of aggravated motor theft in violation of COLO. REV. STAT. § 18-4-409; one count of vehicular eluding in violation of § 18-9-116.5; fourteen counts of felony menacing in violation of § 18-3-206; one count of possession of an incendiary device in violation of § 18-12-109(2); one count of false imprisonment in violation of § 18-3-303; one count of misdemeanor failure to leave the premises in violation of § 18-9-119; and eight counts of criminal attempt to commit reckless manslaughter in violation of §§ 18-3-104, 18-2-101. *People v. Allen*, 78

P.3d 751, 752 (Colo. Ct. App. 2001).[1]  Pursuant to Colorado's general sentencing laws, the court sentenced Mr. Allen to a series of concurrent and consecutive terms resulting in a total sentence of thirty years imprisonment.  *See* COLO. REV. STAT. §§ 18-1.3-401(6) & (7) (formerly COLO. REV. STAT. §§ 18-1-105(6) & (7)).  The sentence included a six-year term for vehicular eluding, the maximum aggravated sentence permitted for that offense under § 18-1-105(6).  *Allen*, 751 P.3d at 752.

Mr. Allen appealed arguing, *inter alia*, that his aggravated vehicular eluding sentence violated *Apprendi*.  *Id.* at 754.  The Colorado Court of Appeals affirmed the convictions and sentence on direct appeal.  *See id*. at 755.  Mr. Allen then filed a timely petition for a writ of certiorari, which the Colorado Supreme Court denied on April 15, 2002.  *Id.* at 751.

On March 6, 2003, Mr. Allen filed this federal habeas petition, again raising *Apprendi* with regard to his vehicular eluding sentence.  Concluding that *Apprendi* does not apply retroactively to litigants on collateral review, the district court dismissed the petition and denied Mr. Allen's request for a certificate of appealability.  We granted his motion for a certificate of appealability, permitting him to proceed on appeal on the following two claims: (1) whether the district

---

[1]*People v. Allen* was originally published at 43 P.3d 689.  It was republished at 78 P.3d 751 to include modifications on denial of rehearing.

court correctly ruled that *Apprendi* does not apply retroactively to Mr. Allen's sentence, and (2) whether *Apprendi* renders unconstitutional the Colorado statutes under which Mr. Allen was sentenced. We address each claim in turn.

## II

Determining the applicability of *Apprendi* to a habeas petition requires us to decide when Mr. Allen's conviction became "final" within the meaning of the relevant statute, here the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996).[2] *See* 28 U.S.C. § 2244(d)(1) (indicating state prisoner has one year from the date his conviction becomes "final" to seek federal habeas relief). Precedent makes clear that resolving whether a convicted defendant may find refuge in a rule of criminal procedure newly announced by the Supreme Court depends in large part on timing.[3] If the conviction is not yet final when the Court announces the rule,

---

[2]Because Mr. Allen's habeas petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), it is governed by AEDPA's provisions. *See Mitchell v. Gibson*, 262 F.3d 1036, 1045 (10th Cir. 2001).

[3]We have already held that "[b]ecause the rule set forth in *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] is rooted in the jury trial and due process guarantees of the Sixth and Fourteenth Amendments,"*Apprendi* announced a "new rule of constitutional law." *Browning v. United States*, 241 F.3d 1262, 1266 (10th Cir. 2001) (citations and internal quotation marks omitted).

lower courts must apply that rule to the defendant's case. *Griffith v. Kentucky*, 479 U.S. 314, 322 (1987). If, however, the conviction is already final, a defendant ordinarily may not avail himself of the newly announced rule. *Teague v. Lane*, 489 U.S. 288, 310 (1989).[4] Thus, our retroactivity analysis hinges entirely on the meaning of the word "final."

The Supreme Court has expressly articulated that "[a] state conviction and sentence become final for purposes of [the *Teague* analysis] when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994); *see also Griffith*, 479 U.S. at 321 n.6. (a final conviction means "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied"). Mr. Allen was convicted by a jury on September 4, 1998. He timely filed his notice of direct appeal on or about November 18, 1998, and his case remained pending in state court until the Colorado Supreme Court denied certiorari review on April 15, 2002. *Apprendi* was decided on June 26, 2000.

---

[4]To be sure, there are specific circumstances in which a newly announced rule may be applied retroactively to an already final conviction. *See Teague v. Lane*, 489 U.S. 288, 310 (1989). Because we hold that Mr. Allen's conviction was not yet final when the Supreme Court announced the rule of *Apprendi*, however, we need not detain ourselves exploring these exceptions here.

As the state concedes in its answer brief, *see* Aple. Br. at 9, this chronology discloses Mr. Allen's conviction was not yet "final" for purposes of AEDPA when *Apprendi* was decided. Indeed, Mr. Allen raised *Apprendi* both before the Colorado Court of Appeals on initial appeal and in the state supreme court via his certiorari petition. Because the rule of *Apprendi* was newly announced prior to the date on which Mr. Allen's conviction became final, the rule applies to his case notwithstanding his invocation of it in a collateral attack. Accordingly, the district court's determination that *Apprendi* does not apply retroactively to Mr. Allen's vehicular eluding sentence was erroneous.

**III**

The closer question is whether *Apprendi* renders unconstitutional the Colorado statutes under which Mr. Allen was sentenced. Under AEDPA, a federal court may not grant habeas relief on a claim adjudicated on the merits in state court, such as Mr. Allen's *Apprendi* claim, unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id*. § 2254(d)(2). *See Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004). Moreover, state court fact findings

-6-

are presumed correct unless the petitioner rebuts them by clear and convincing evidence. *See* § 2254(e)(1); *Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000).

Decisions "contrary to" or representing an "unreasonable application of" federal law are independent bases for habeas relief. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (O'Connor, J., concurring). A state court decision is contrary to clearly established federal law under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See id.* at 412-13. A state court decision is an unreasonable application of federal law under § 2254(d)(2) if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413. "The reasonableness of the state court's application of federal law is to be evaluated by an objective standard. The Supreme Court has cautioned that an unreasonable application of federal law is different from an incorrect or erroneous application of federal law." *Mitchell v. Gibson*, 262 F.3d 1036, 1045 (10th Cir. 2001) (internal quotation marks and citations omitted). With these standards in mind, we turn to Mr. Allen's legal argument.

Mr. Allen contends the trial court's decision to increase his vehicular

eluding sentence based on facts not found by the jury violated his Sixth Amendment right to a trial by jury. In *Apprendi*, the Supreme Court invalidated a New Jersey sentencing statute that permitted judges to assign an enhanced sentence, greater than the otherwise applicable statutory maximum, based on a post-conviction judicial finding that the defendant's offense qualified as a "hate crime." 530 U.S. at 468-69. In order for a defendant's sentence to comport with the Sixth Amendment, "*any fact* [other than the fact of a prior conviction] that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490 (emphasis added). The Court explained that the label which the legislature applies to the fact (such as "sentencing factor" or "element") is irrelevant because the inquiry properly focuses on effect rather than form. *Id*. at 494. Simply stated, *Apprendi* forbids courts from imposing a sentence exceeding the statutory maximum allowed for the defendant's crime of conviction.

Four years later, the Court applied the rule of *Apprendi* to the State of Washington's determinate sentencing regime. *Blakely v. Washington*, 124 S. Ct. 2531 (2004). *Blakely* involved a defendant who pled guilty to second-degree kidnapping, a state offense that carried a statutory maximum of ten years imprisonment. Based solely on the facts admitted by Mr. Blakely, Washington's Sentencing Reform Act authorized a "standard" sentencing range of forty-nine to

fifty-three months imprisonment. *Id*. at 2534-35. Pursuant to the act, however, a court could exceed a fifty-three month sentence for a second-degree kidnapping conviction if it found a "substantial and compelling reason." *Id*. (quoting WASH. REV. CODE ANN. § 9.94A.310(3)(b)). Because the state court found that Mr. Blakely had committed his crime with "deliberate cruelty," it sentenced him to ninety months, a term more than three years greater than the top end of the standard range. *Id*. A majority of the Supreme Court held this practice unconstitutional and in doing so instructed

> that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Id*. at 2537 (citations omitted) (emphasis in the original). In the term following *Blakely*, the Court extended *Apprendi* to the federal sentencing guidelines. *See United States v. Booker*, 125 S. Ct. 738 (2005).

Under the Colorado sentencing scheme, a trial court must impose a sentence within the applicable presumptive range for a felony offense unless it finds that extraordinary mitigating or aggravating facts are present. *See People v. Leske*, 957 P.2d 1030, 1042-43 (Colo. 1998). As explained by the Colorado

Supreme Court:

> Felony sentencing in [Colorado] is largely dictated by a complex scheme of interlocking statutes, premised upon the segregation of felony offenses into six levels or classes, each with its own presumptive sentencing range. *See* § 18-1.3-401, 6 C.R.S. (2002) (formerly § 18-1-105). Under various circumstances, courts are permitted to sentence convicted felons in a mitigated range, as little as half the minimum presumptive sentence, or in an aggravated range, as great as twice the maximum presumptive sentence. § 18-1.3-401(6). Likewise, under various circumstances, courts may be limited to specified portions of the statutorily prescribed range for a given class of felony.

*Martinez v. People*, 69 P.3d 1029, 1031-32 (Colo. 2003). Mr. Allen's case involves a departure from the applicable presumptive range based on the presence of extraordinary aggravating factors under § 18-1.3-401(6), which provides:

> In imposing a sentence to incarceration, the court shall impose a definite sentence which is within the presumptive ranges set forth in subsection (1) of this section unless it concludes that extraordinary mitigating or aggravating circumstances are present, are based on evidence in the record of the sentencing hearing and the presentence report, and support a different sentence which better serves the purposes of this code with respect to sentencing, as set forth in section 18-1-102.5. *If the court finds such extraordinary mitigating or aggravating circumstances, it may impose a sentence which is lesser or greater than the presumptive range; except that in no case shall the term of sentence be greater than twice the maximum nor less than one-half the minimum term authorized in the presumptive range for the punishment of the offense.*

COLO. REV. STAT. § 18-1.3-401(6) (emphasis added). In other words, a sentencing court is permitted to impose a sentence beyond the maximum presumptive range for a given felony offense only if it finds some additional fact warranting an enhancement. *Id.* § 18-1.3-401(1)(b)(I)(6) & (7). A jury's verdict

alone is insufficient to impose a sentence in the aggravated range. *See id.* In fact, the trial court must make specific findings on the record detailing the extraordinary circumstances that justify a variance from the presumptive range. *Id.* § 18-1.3-401(7).

Mr. Allen's vehicular eluding conviction constitutes a class 5 felony offense carrying a presumptive sentence range of one to three years incarceration in Colorado. COLO. REV. STAT. §§ 18-1.3-401(1)(a)(V)(A) (enumerating penalty authorized for conviction of class 5 felony); 18-9-116.5 (expressly providing that vehicular eluding is a class 5 felony); *see also Allen*, 78 P.3d at 754. At Mr. Allen's sentencing, the state district court found the following facts which it determined where extraordinarily aggravating:

> (1) defendant drove at high speeds the wrong way on major streets and a freeway during rush hour; (2) defendant drove at high speeds on a flat tire and later on the metal rim of a wheel; (3) defendant caused numerous other vehicles to drive off the side of the road and placed many people, including a school bus driver, in fear; (4) the chase was lengthy, both in time and distance, proceeded through a residential area, and placed a large number of people in jeopardy; and (5) defendant's criminal record, which included several serious juvenile and adult violations, demonstrated that defendant was a significant danger to others.

*Allen*, 78 P.3d at 755. On the basis of these findings, the court departed from the three-year maximum presumptive range authorized by the jury's verdict and sentenced Mr. Allen to a six-year term of imprisonment.

In his initial appeal, Mr. Allen argued that his receipt of a sentence twice

the length of that permitted by the jury's verdict alone offended *Apprendi*. The Colorado Court of Appeals disagreed, reasoning that "upon conviction by a jury, and *without the proof of more*," Mr. Allen was "exposed to a maximum sentence of six years incarceration in the DOC, the maximum in the aggravated range." *Id*. (emphasis added). In the court's opinion, the extraordinary aggravating facts found by the judge at Mr. Allen's sentencing were not, "as was the case in *Apprendi*, specified facts or considerations that, if found, mandate an increased penalty range or class of the offense." *Id*. (citing *Martinez*, 32 P.3d at 520).

> Thus, unlike *Apprendi*, which concerned the imposition of a sentence beyond that provided for the offense by statute, based on a wholly separate fact or element that was not charged and not submitted to the jury, here, defendant received a sentence to which he was exposed by the original charge. *Apprendi* does not require the invalidation of the sentencing scheme adopted by the General Assembly, which creates a presumptive sentence range and permits the trial court, in its discretion, to sentence in aggravated or mitigated ranges based on unspecified extraordinary aggravating or mitigating factors or circumstances particularized to the defendant or the offense.

*Id*. Indeed, the appellate court's determination that a defendant convicted of any felony is exposed to a sentence up to the aggravated maximum compelled its conclusion that the Colorado sentencing statutes challenged by Mr. Allen were beyond the reach of *Apprendi*.

Mr. Allen maintains that even the most cursory examination of *Apprendi*'s progeny makes clear the error of the state court of appeals' conclusion that aggravated maximums equate to statutory maximums. Because *Blakely* teaches

-12-

that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected by the jury verdict or admitted by the defendant*," Mr. Allen argues, the maximum sentence the trial court could have imposed solely on the basis of the facts reflected by the jury verdict in his case was the presumptive maximum of three years. *See Blakely*, 124 S. Ct. at 2537.

In an *en banc* opinion decided on May 23, 2005, nearly one year after *Blakely* was decided, the Colorado Supreme Court essentially agreed with Mr. Allen's argument, holding that the "statutory maximum" for *Apprendi/Blakely* purposes is the "presumptive range" established for the specific crime with which the defendant was charged. *Lopez v. People*, 113 P.3d 713, 726 (2005). In so holding, the Colorado Supreme Court rejected the prosecution's invitation "to construe Colorado's general sentencing statute as comprising one simple range" containing both mitigating and aggravating factors. *Id*. Thus, facts comprising aggravating factors not falling into one of the so-called *Blakely*-exempt or *Blakely*-compliant exceptions must be found by a jury before they may be used to increase a defendant's sentence.

But the current state of the law is irrelevant to the inquiry before us. Because the question we must answer is whether the decision in *Allen* "was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), we are exclusively concerned with the state of the case law at the time Mr. Allen's conviction became final.

As explained earlier, a conviction becomes final when the availability of a direct appeal has been exhausted, and the time for filing a certiorari petition with the Supreme Court has elapsed or the Court has denied a timely certiorari petition. *See Caspari*, 510 U.S. at 390. Mr. Allen had 90 days from April 15, 2002 – the day the Colorado Supreme Court denied review – to petition the Supreme Court for a writ of certiorari. That time elapsed and Mr. Allen's conviction became final within the meaning of AEDPA on July 15, 2002. Consequently, Mr. Allen's conviction was final long before the Court issued *Blakely* on June 24, 2004. Furthermore, we have expressly held that *Blakely* did not announce a watershed rule of criminal procedure which would apply retroactively to petitioners on collateral review who raised *Apprendi* on direct appeal. *See United States v. Price*, 400 F.3d 844, 849 (10th Cir. 2005) ("we hold that *Blakely* does not apply retroactively to convictions that were already final at the time the Court decided *Blakely*"). Therefore, all that is left to decide is whether the state court's decision in *Allen* is contrary to, or involved an unreasonable application of, *Apprendi*.

As noted previously, the Colorado Court of Appeals held in *Allen* that under the state's sentencing statutes, a defendant is exposed by the jury's verdict

to a sentence up to the aggravated maximum because the trial court has the discretion to find that one or more facts about the offense or the offender are extraordinarily aggravating and impose an enhanced sentence. *Allen*, 78 P.3d at 755. According to the court, because the aggravated maximum was the statutory maximum for Sixth Amendment purposes under the Colorado scheme, Mr. Allen simply received a sentence to which he was exposed by the original vehicular eluding charge. *Id.* As a result, the court concluded that *Apprendi* did not affect the operation of the statutes under which Mr. Allen was sentenced. *Id.*

It was not until the decision in *Blakely* that the Supreme Court clarified the meaning of statutory maximum for *Apprendi* purposes. *Blakely*, 124 S. Ct. at 2537. Prior to the issuance of *Blakely*, the federal circuits unanimously believed that the "statutory maximum" was the greatest sentence permitted by *the statute of conviction*, irrespective of what fact-finding the court conducted to impose that sentence:

> Based upon *Apprendi*'s language addressing situations where a sentencing court "increase[d] the penalty for a crime beyond the statutory maximum," . . . this court subsequently applied *Apprendi* only where a sentencing court had imposed a sentence above the statutory maximum permitted by the statute of conviction, regardless of what fact finding the court, rather than the jury, conducted to impose a sentence within that statutory maximum.

*Price*, 400 F.3d at 847 (citing cases); *see also Simpson v. United States*, 376 F.3d 679, 681 (7th Cir. 2004) (stating that "before *Blakely* was decided, every federal court of appeals had held that *Apprendi* did not apply to guideline calculations

made within the statutory maximum," citing cases). Indeed, "at the time [Mr. Allen's] convictions became final, after *Apprendi* but before *Blakely*, a court would not have felt compelled to conclude *Blakely*'s rule was constitutionally required." *Price*, 400 F.3d at 848. In lockstep with federal courts, the Colorado Court of Appeals ruled that *Apprendi*'s statutory maximum permitted sentencing courts to make findings so long as the sentence ultimately imposed was within the maximum range of the statute of conviction. *Allen*, 78 P.3d at 754-55. We, therefore, cannot conclude that at the time the state court evaluated Mr. Allen's sentencing argument, its interpretation of *Apprendi* was unreasonable.

In sum, we **AFFIRM** the district court's dismissal of Mr. Allen's habeas petition, albeit on grounds different from those relied on by that court.