Jose **ARREGUIN**, Petitioner,

v.

**K.W. PRUNTY, Warden, and Daniel E. Lungren, Attorney General of the State of California, Respondents.**

**No. CV 95–4956 RAP (JGX).**

United States District Court,
C.D. California.

Aug. 19, 1998.

Jose Arreguin, Soledad, CA, pro se.

Lisa J. Brault, Cal. Asst. Atty. Gen., Office of Attorney General of California, Los Angeles, CA, for Respondents.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

PAEZ, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has reviewed the petition, all of the records and files herein, and the attached Report and Recommendation of Magistrate Judge, and the objections to the Report and Recommendation that were filed on October 9, 1997. After having made a de novo determination of the portions to which objections were directed, the Court concurs with and adopts the findings and conclusions of the magistrate judge that the trial court's failure to instruct the jury on the "major participant" language required by Cal.Penal Code § 190.2(d) violated petitioner's due process rights under the Fourteenth Amendment of the United States Constitution.

The government makes the following objections: (1) that under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Court is barred from granting habeas relief because there is no clear federal precedent extending "structural defect" analysis to state instructional error relating to sentencing, (2) petitioner's liberty interest in a trial free from structural defects does not extend to instructions relating to sentencing; and (3) even if *Teague* does not apply and the instruction given violated petitioner's due process rights, the trial court's failure to include "major participant" in the jury instruction is subject to harmless error analysis.

These objections are without merit. Respondents raise the *Teague* issue for the first time in its objections to the magis-

trate judge's report and recommendation and mistakenly characterizes the right involved as a Sixth Amendment right rather than due process rights created by state statute.

■ In *Teague v. Lane*, the Supreme Court held that habeas relief is unavailable if granting the relief would require announcement or application of a new constitutional rule of criminal procedure. 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). A new rule "breaks new ground or imposes a new obligation on the State or the Federal government." *Id.* *Teague*'s "nonretroactivity principle prevents a federal court from granting habeas relief to a state prisoner based on a rule announced after his conviction and sentence became final." *Caspari v. Bohlen*, 510 U.S. 383, 399, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994).

■ In determining whether a state prisoner is entitled to habeas relief, the Court must apply *Teague* in a three-step analysis. *Caspari*, 510 U.S. at 390, 114 S.Ct. 948. First, the court must ascertain the date on which the defendant's conviction and sentence became final. *Id.* Second, the court must survey the legal landscape to determine whether a state court considering the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule sought was required by the Constitution. *Id.* Finally, even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle.[1] *Id.*

■ Respondent wrongly contends that petitioner is relying on a "new rule" and thus is barred by *Teague* from seeking habeas relief. Petitioner claims his due process rights were violated because the trial court failed to instruct the jury that he was required to be a "major participant" in the attempted robbery, pursuant to Cal.Penal Code § 190.2. Petitioner never relied on a "new rule" because § 190.2 was amended to its present form on June 6, 1990—three years before his conviction on June 7, 1993. Accordingly, the trial court should have instructed the jury using the amended "major participant" language, instead of using CALJIC No. 8.80, an outdated instruction, which required only "participation."

■ The government contends that *Teague* bars the "application of structural defect/due process analysis to state instructional error relating to *sentencing*." In support of this argument, the government cites *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), which holds that the *Sixth Amendment* does not guarantee a right to jury sentencing and that due process does not require that factual determinations pertaining to sentencing be established beyond a reasonable doubt. *McMillan* has no application here because petitioner is arguing that his due process rights guaranteed by the Fourteenth Amendment were violated, not his Sixth Amendment rights. The principle that state laws may create liberty interests triggering federal due process rights is well-established. The trial court's failure to instruct the jury using the "major participation" language had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 630, 113 S.Ct. 1710.

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus be **GRANTED,** unless petitioner is brought to re-trial on the sentencing issue within 90 days of the

---

1. There are two exceptions to *Teague*'s prohibition against "new rules." Retroactivity will only apply in habeas review if the new rule either (1) "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to pro-

scribe;" and (2) is a "watershed rule of criminal procedure" implicating the fundamental fairness and accuracy of the proceeding. *Teague*, 489 U.S. at 311, 109 S.Ct. 1060. Neither exception is applicable to this case.

Judgment becoming final, unless extended as authorized by state law.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall serve copies of the Order Adopting Report and Recommendation and Judgment by United States mail on the petitioner, the Attorney General of the State of California, and the Presiding Judge of the Ventura Superior Court, in and for the County of Ventura, California.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE
### (State Habeas Corpus)

GROH, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Richard A. Paez, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

Petitioner Jose Arreguin, a state prisoner, was convicted by a jury in the Superior Court of Ventura County of first degree murder and attempted second degree robbery. The jury found true the special circumstance that the murder was committed in the attempted commission of robbery. Petitioner was sentenced to life imprisonment without possibility of parole plus one year. (Clerk's Transcript ("C.T."), 160–61, 171–73.)

Petitioner alleges two instances of improper instructions to the jury: (1) that the trial court erred in failing *sua sponte* to define the meaning of the term "reckless indifference" as used in the special circumstance instruction; and (2) that the trial court erred in failing to instruct the jury that it had to find that petitioner was a "major participant" in the predicate felony before it could find the special circumstance to be true. (Pet., p. 6a.)

1. The facts are set forth in the opinion of the Court of Appeal. (Return, Ex. B, pp. 38–41.)

2. Soto later entered a plea and testified for the State. (1 Reporter's Transcript ("R.T.") 53–54.)

## FACTS

Briefly summarized, the circumstances surrounding the crime are as follows.[1] On December 1, 1992, petitioner and two others robbed Richard Schell, a landlord making collections, of over $2,000 as he sat in his truck. A fourth robber, George Pena, waited behind the wheel of the group's getaway car a short distance away. According to the State's proof, the shooter, Martinez, approached the driver-side window, gun in hand. Petitioner was behind Martinez holding his jacket. The other robber, Soto,[2] broke the passenger-side window. The victim started the truck in an attempt to escape. Martinez then shot him in the heart, killing him. Just prior to the shooting, petitioner said, "Shoot 'im, shoot 'im." After the murder, the three fled.

Petitioner's defense was that his presence at the scene was by coincidence; that he was not involved in the crime at all. Petitioner testified on his own behalf that he had asked Pena for a ride from Oxnard to Camarillo, that he did not know that the others were planning a robbery or that anyone was armed, and that he never went near Schell's truck. (Reporter's Transcript ("R.T.") 450–51, 454, 457, 462, 469–76.)

At trial, the judge instructed the jury with regard to the special circumstances finding from CALJIC 8.80:[3]

> If you find the defendant guilty of murder of the first degree, you must then determine if the special circumstance that the murder was committed while the defendant was engaged in the commission or attempted commission of a robbery is true or not true.
>
> The people have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to

3. CALJIC is the acronym for California Jury Instructions Criminal. *See* 1 CALJIC at 376–77 (5th Ed.1988).

whether a special circumstance is true, you must find it to be not true.

If you find beyond a reasonable doubt that the defendant was a co-conspirator or an aider and abettor, then you must also find beyond a reasonable doubt that the defendant with reckless indifference to human life participated as a co-conspirator with or aided and abetted an actor in commission of the murder in the first degree in order to find the special circumstance to be true.

\*   \*   \*   \*   \*   \*

(C.T.132.) The language of this instruction is in the form that it appeared prior to the adoption, in 1990, of Proposition 115, which amended California Penal Code. (CPC) section 190.2(d)(quoted *infra* p. 4, fn.4).

No request was made for an instruction defining "reckless indifference" and none was given.

Petitioner was convicted of all counts and special allegations. (C.T.171.)

## DISCUSSION

■ The thrust of petitioner's claim is that the trial court erred in instructing the jury with regard to the special circumstance which, in turn, resulted in a sentence of life without the possibility of parole.[4] Instructional errors are not open to collateral review unless the error was of such dimension that it "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991). Petitioner's conten-

tions will be considered in light of this principle.

### 1. Failure To Define "Reckless Indifference"

■ Petitioner contends that the trial court had a duty *sua sponte* to define the phrase "reckless indifference to human life" for the jury. (Pet., p. 6a; Traverse, pp. 15–18.)

The resolution of this claim is directly controlled by *Walker v. Endell,* 850 F.2d 470, 475 (9th Cir.1987), *cert. denied,* 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988). In that case, also involving a habeas petition brought by a petitioner convicted of murder, the trial court did not define the term "criminal recklessness" as used in its instructions to the jury. Finding that the error was an omission rather than a misstatement of law,[5] the court determined, based on Alaska state court precedent, that criminal recklessness under Alaska law relates essentially to the common-sense definition of recklessness which the average juror could understand and apply without an instruction. The court therefore held that the omission did not violate petitioner's due process rights and that habeas relief was not warranted. *Id.*

That analysis applies with equal force here. In *People v. Estrada,* 11 Cal.4th 568, 46 Cal.Rptr.2d 586, 904 P.2d 1197 (1995), *cert. denied sub nom. Siqueros v. California,* 517 U.S. 1159, 116 S.Ct. 1550, 134 L.Ed.2d 653 (1996), the California Supreme Court held that, under California

---

**4.** The statute in effect at the time of the crime, California Penal Code section 190.2, subdivision (d), reads as follows:

Notwithstanding subdivision (c), every person not the actual killer, who, with reckless indifference to human life and *as a major participant*, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a), which felony results in the death of some person or persons, who is found guilty of murder in the first degree therefor, shall suffer death or confinement in state prison for life without the possibility of parole, in any case

in which a special circumstance enumerated in paragraph (17) of subdivision (a) of this section has been found to be true under Section 190.4.11 [emphasis added.]

This subdivision was added effective June 5, 1990. As previously noted, the finding of the special circumstance subjected petitioner to imprisonment for life without possibility of parole.

**5.** In *Henderson v. Kibbe,* 431 U.S. 145, 155, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977), the United States Supreme Court said that the omission of an instruction is less likely to be prejudicial than a misstatement of the law.

law, a trial court has no *sua sponte* duty to define the phrase "reckless indifference to human life" when instructing a jury regarding a felony-murder special-circumstance allegation against a defendant who is not the actual killer. The court concluded that because a common understanding of the phrase amply conveys the meaning of the statute, a trial court is not required, in the absence of a request, further to explain the statutory phrase to the jury. 11 Cal.4th at 572, 46 Cal.Rptr.2d at 588, 904 P.2d at 1199.

Thus, under the rationale of *Walker,* since a jury is able to understand the correct meaning of the phrase "reckless indifference to human life" without a supplemental instruction, the trial court's failure to give such an instruction *sua sponte* in this case did not infringe petitioner's due process rights.

### 2. Failure to Instruct on "Major Participant" Requirement

■ Petitioner claims his due process rights were violated because the special circumstance instruction omitted any reference to the statutory requirement that the accused have been a "major participant" in the predicate offense (attempted robbery) before the special circumstance could be found. Respondents contend that petitioner merely presents a question of state law, and, if there were any error, it was harmless. (Return at 14–25.)

Respondents' reliance upon *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), is plainly misplaced. To be sure, *McMillan* holds that the Sixth Amendment does not guarantee a right to jury sentencing and that due process does not require that factual determinations

pertaining to sentencing be established beyond a reasonable doubt. But those are not the issues presented by petitioner. Both of those rights—to a jury determination and a finding beyond a reasonable doubt—are guaranteed by the California statutes. Respondents concede that neither of these rights was afforded petitioner. The question then becomes whether that failure denied petitioner due process of law and, if so, whether he was prejudiced by that denial.

It is well-established that "state laws can create liberty interests triggering federally enforceable procedural rights." *Moran v. Godinez,* 57 F.3d 690, 697 (9th Cir.1994), *cert. denied.,* 516 U.S. 976, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995). "Misapplication of these laws that lead to deprivations of those liberty interests by state institutions may be reviewed in federal habeas proceedings." (quoting *Ballard v. Estelle,* 937 F.2d 453, 456 (9th Cir.1991) Under the California statutes, petitioner was unequivocally entitled to a jury determination that he was a "major participant" in the robbery before he could be sentenced to death or life without possibility of parole. *See* Section 190.2(d) *supra* at 990 n. 4; Section 190.4.[6] Here, there can be no doubt but that petitioner's due process rights were infringed as it is difficult to imagine a more fundamental defect than allowing the jury to find the special circumstance to be true without the jury ever having been made aware of the "major participant" requirement. That this error profoundly affected the integrity of the sentencing process and violated petitioner's right to due process can hardly be questioned. *See Estelle v. McGuire,* 502 U.S. at 72, 112 S.Ct. at 482.[7]

**6.** Section 190.2 states that the special circumstance is to be found true under Section 190.4 which provides that a jury, unless waived, shall make a special finding of the truth of each alleged special circumstance beyond a reasonable doubt.

**7.** Petitioner argues the trial court was required to instruct the jury using the "major participant" language under *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127,

*reh. denied,* 482 U.S. 921, 107 S.Ct. 3201, 96 L.Ed.2d 688 (1987). (Traverse, pp. 7–11.) Apart from the fact that the Supreme Court in *Tyson* introduced the concept of "major participant" into Eighth Amendment death penalty jurisprudence in felony murder cases, the case has no bearing on the instant case. That is so because petitioner has not been sentenced to death and petitioner's claim is not based upon the Eighth Amendment.

■ As to respondents' claim that any error was harmless, it is true that the failure to instruct à jury on an essential element of a crime is harmless if no rational jury could have made the findings it did without also finding the omitted or presumed fact to be true. *Martinez v. Borg,* 937 F.2d 422, 425 (9th Cir.1991); *Hennessy v. Goldsmith,* 929 F.2d 511 (1991). However, that analysis can have no application here, as *it cannot be said that the jury implicitly found that petitioner was a "major participant" in the robbery.* Respondents offer no explanation how the jury could have found, by implication, an element of which it was completely unaware and which was not suggested by any other issue in the case. It is obvious, that the jury never had occasion to assess the relative levels or degrees of participation among the culprits.

Respondents' argument also assumes that the issue is subject to harmless error analysis. I do not agree. In somewhat similar circumstances, the Ninth Circuit held the defect to be of a structural nature and not subject to harmless error analysis.

We find it difficult to imagine a more fundamental or structural defect than allowing the jury to deliberate on and convict Harmon of an offense, for which it had no definition. *See* [*Sullivan v. Louisiana*], 113 S.Ct. at 2083 (deprivation of the "basic protection" of having a jury make the requisite finding of guilt "unquestionably qualifies" as a "structural defect" under *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). In effect, the jury was free to convict Harmon without finding that the State proved any of the requisite elements of the crime. There is no way we can determine the extent to which Harmon's convictions were actually affected by the failure to instruct, because we simply cannot tell how the jury reached its decision. "There is no object ... upon which harmless error scrutiny can operate." *Sullivan,* 508 U.S. at [280], 113 S.Ct. at 2082.[8]

*Harmon v. Marshall,* 57 F.3d 763, 765 (9th Cir.1995). These observations apply with equal force here.

It is also evident that petitioner not only did not get a jury determination on this question, but that also there was never any determination until the Court of Appeal, en route to its finding of harmless error, concluded, without discussion, that the evidence overwhelmingly established that he was a major participant. In so doing, the Court of Appeal substituted its own judgment for that of the jury contrary to the Court's admonition in *Sullivan* that:

A reviewing court can only engage in pure speculation—its view of what a reasonable jury would have done. And when it does that, "the wrong entity judge[s] the defendant guilty."

*Sullivan v. Louisiana,* 508 U.S. at 281, 113 S.Ct. at 2082 (quoting *Rose v. Clark,* 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). If a state's guarantee of the right to a jury determination is to be accorded a dignity equivalent to the same guarantee under the federal constitution, petitioner's sentence to life without parole cannot stand, since he, no less than the defendants in *Sullivan* and *Harmon,* had his fate determined by "the wrong entity."

It will therefore be recommended that the writ issue.

## RECOMMENDATION

IT IS RESPECTFULLY RECOMMENDED that the court issue an Order:

(1) approving and adopting this Report and Recommendation; and,

---

8. As previously noted, *supra* at 991, it is of no consequence that the instruction here pertained to a sentencing factor rather than an element of the offense. The jury trial guarantee with which this case is concerned is not based on the Sixth Amendment of the United States Constitution, but rather upon an explicit guarantee extended by the State of California. No reason appears why the infringement of that guarantee ought not be evaluated by the same standards as the Sixth Amendment guarantees.

(2) directing that Judgment be entered granting the petition for writ of habeas corpus, unless petitioner is brought to retrial on the sentencing issue within 90 days of the Judgment becoming final, unless extended as authorized by state law.[9]

IT IS HEREBY ADJUDGED that the Petition for Writ of Habeas Corpus is granted, unless petition is brought to retrial on the sentencing issue within 90 days of the Judgment becoming final, unless extended as authorized by state law.

September 29, 1997.

---

9.   Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to file objections with the above-named District Judge within 10 days (20 days, if in custody and unrepresented), as provided in Rule 3.1.04 and .05 of the Local Rules Governing Duties of Magistrate Judges and Fed.R.Civ.P. 72. The failure of either party to object to a particular finding of fact or conclusion of law may constitute a waiver of the right to contest the matter on appeal. *Smith v. Frank*, 923 F.2d 139, 141 (9th Cir.1991); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir.1991). A notice of appeal pursuant to the Federal Rules of Appellate Procedure should not be filed until Judgment has been entered. Please note that the rules do not contemplate the filing of declarations, documents or other new factual material in support of objections, and the District Judge may decline to consider any such new matter.